WM. McFADDEN ET AL. v. THOS. H. LONGHAM.

(Case No. 1382.)

1. CONSTITUTIONAL LAW — TAXATION. — The act of April 18, 1879, in so far as it attempted to authorize a collector of taxes to collect in the manner and under the circumstances therein specified the sum of $25 a section for each section of public school lands inclosed, from the person inclosing or controlling it, is unconstitutional.

2. TAXATION. — While the enforcement of a valid tax, by whatever method, does not constitute a taking of property without due process of law in the sense of the constitution, and is not a taking of private property for public use within the meaning of that instrument, it is not within the power of the state to collect under arbitrary and *ex parte* proceedings, as *a tax*, a sum of money which the statute declares shall be paid by the occupier of school lands as *rent*.

APPEAL from Jefferson. Tried below before the Hon. W. H. Ford.

This is an injunction suit brought by the appellants to enjoin the sheriff of Jefferson county from enforcing by the sale of their personal property, which he had seized and advertised for sale to collect the alleged yearly rental claimed to be due from them to the state of Texas, on account of their having inclosed by fencing twelve and a quarter sections of public free school lands, amounting to

$306.25, under the provisions of " An act to require persons inclosing public free school lands to pay an annual rent therefor."

On the hearing, the temporary injunction which had been granted was dissolved on a verdict of a jury being rendered upon the facts in favor of the defendant; and judgment was rendered against the defendants, authorizing the sheriff to proceed and collect the amount claimed " as the law directs."

The plaintiffs' petition showed that the sheriff was proceeding to sell their cattle under the authority given by said statute, based upon the report of the county surveyor to the commissioners' court, showing that the plaintiffs had inclosed twelve and a quarter sections of public free school lands, which were duly designated in a tabular statement.　Among other grounds relied on for injunction by plaintiffs, they claimed that the levy upon, and sale of their property, was not authorized by virtue of any judgment rendered against them by any court known to the law; and that if the sale should be made, they would be deprived of their property without adequate compensation and without their consent.

The evidence showed that the proceedings of the county surveyor and the commissioners' court were *ex parte;* that the plaintiffs had no notice thereof, and did not participate in them.

The charge of the court recognized the validity of the statute under which the sheriff had proceeded to levy on and advertise the property for sale, and instructed the jury to find for the defendant if the facts under the evidence subjected the plaintiffs to the remedy which that law, under its provisions, contemplated.

The plaintiffs asked the court to give the following instruction, which was refused, viz.:

" To find against the plaintiffs in this cause, the jury must believe that this levy or claim against them is an *ad valorem* tax upon property of one of its subjects or citizens, levied in proportion to its value, after ascertainment of its value according to law; or that it is a poll tax; or that it is an occupation tax upon a natural person not engaged in agricultural pursuits or a corporation; or that it is a tax upon incomes; or an amount agreed to be paid as rent.　And if the jury do not believe that the levy of $25 per section of the land mentioned comes within some one or more of these classes of taxation, or that there was a contract between some agent of the state government and these plaintiffs whereby the plaintiffs agreed and were bound to pay said levy or rental, they will find for the plaintiffs.

"If the jury believe that the amount of $25 per section is levied

upon the use of said sections of lands, and that such levy is more than the fair valuation of said use, they will find for plaintiffs, unless they agreed to pay the same."

The plaintiffs appealed to the supreme court, and, among other errors, assigned the following:

"The court erred in instructing the jury to find for defendant under the act of the legislature entitled 'An act to require persons inclosing public free school lands to pay an annual rent therefor,' approved April 17, 1879, to take effect July 24, 1879, for that, first, said act is unconstitutional and void; second, said act in its operation, as against plaintiffs, whose inclosure was made before it was passed, as appears by the evidence herein, is against the constitution, in that it deprives them of their property levied on, if sold, without the due course of the law of the land, without a hearing, without their consent, without a jury, and without due compensation."

*O'Brien & John,* for appellants.

I. The court erred in its section first of instructions to the jury, in that it authorized and required the jury upon certain findings therein stated to find for defendant, and against plaintiffs, for the rent of the twelve and a quarter sections of land for the year next before the first Monday of June, 1880 (the date of the county surveyor's report), which included time before the law was enacted between June, first Monday, 1879, and the 24th day of July, 1879, the date of such enactment. Section second (instead of section first of the court's charges, as erroneously marked in the assignment of errors) instructed the jury substantially, among other things, to find for the defendants and against the plaintiffs, if they believe the county surveyor's report was made on the first Monday in June, 1880, that the commissioners' court had at a subsequent term of said court acted upon such report, and that appellants had for the year next preceding such report inclosed such twelve and a half sections to the exclusion of the public. The county surveyor's report was made on the first Monday in June, 1879. Const. of 1876, art. I, sec. 16; 4 Tex., 470; 21 Tex., 716; 25 Tex. Sup., 428; 33 Tex., 745.

II. The property of the appellants is not liable for a claim of rent due the state, without legal process, and the trial of the issues of law and fact by a court having jurisdiction thereof, and a jury if desired. Const. of 1876, art. I, secs. 15, 17 and 19.

III. The appellants were entitled to have the questions as to

whether or not they had fenced, used or exclusively controlled said twelve and a quarter sections of free public school land, presented and tried by some court of competent jurisdiction and a jury, all of which issues were assumed against appellants upon the report of the county surveyor, and its partial approval by the county commissioners' court, acting under authority of the act of the 17th of April, 1879, thereby operating as a legislative judgment. Appellants had no notice of surveyor's report nor of commissioners' court proceedings, and were not allowed any hearing or defense. Const. of 1876, art. I, secs. 15, 17 and 19; *Ex parte* Towles, 48 Tex., 413; 54 Tex., 153; Cooley's Const. Lim., 94 and 369.

IV. Appellants' fence was built, and any inclosure of public free school lands was made (if such inclosure as the present statute contemplates) in 1878 under laws sanctioning such inclosure, and the act of the 17th of April, 1879, as to appellants is retroactive. Const. of 1876, art. I, sec. 16; Laws of 1876, p. 233; Laws of 16th Leg., p. 101; 4 Tex., 407; 21 Tex., 716.

V. The property of appellants is liable to seizure and sale, under the provisions and penalties imposed by law for the collection of taxes for taxation only; and the seizure and sale thereof in that manner for any other purpose by the state is unconstitutional. Const. of 1876, art. III, sec. 48; also art. I, sec. 19.

*Tom J. Russell*, for appellee.

I. That the court correctly charged the jury in the second section of the charge as to the question of facts as presented by the pleadings. Acts of 1879, ch. 92, p. 101.

The taxes due on said school lands, or rents due on the same for use and occupation thereof by plaintiffs, renders their property liable for the amount of said taxes or rents, and subject to be taken and sold by the collector of taxes, in the manner prescribed by law, for the payment of the same, without other legal proceedings than those prescribed by the law regulating the collection of such rents or taxes. Const. of Texas, art. VIII, secs. 1, 2, 3 and 13; Acts of 1879, ch. 92, p. 101; Appendix R. S., p. 1; Blessing *v.* City of Galveston, 42 Tex., 641.

The defendants were liable for the rental due on said school lands as fixed by law. The law regulating the use and inclosure of school lands is a public law, of which all citizens are bound to take notice. The use and occupation of said school lands, as found by the jury on the trial, on the part of the plaintiffs below, was an assent by them of acceptance of the terms of the law upon which parties

might occupy and enjoy exclusively the public school lands.   Acts of 1879, ch. 92, p. 101;  Chitty on Contracts, pp. 16–20;  1 Parsons on Contracts, 475;  Pollock on Contracts, pp. 28, 29, 30.

WALKER, P. J. COM. APP.— This case involves the construction and the determination of the validity of "An act to require persons inclosing public free school lands to pay an annual rent therefor," approved April 18, 1879, which took effect ninety days after its passage.   Appendix to Revised Statutes, p. 3; Acts of 1879, p. 101. That statute provided as follows, to wit:

"Section 1.   That each and every person who shall have inclosed by fencing or otherwise any of the public free school land belonging to the state, and shall use the same to the exclusion of the public, shall pay an annual rental value therefor of the sum of $25 for each section so inclosed.

"Sec. 2.   And it shall be the duty of the surveyor of each county to make a report to the county commissioners' court on the first Monday in June in each year, of the number of sections of public school lands in his county inclosed during the past year, and the names of the person or persons controlling such inclosed lands, and the number of sections controlled by him or them respectively.

"Sec. 3.   And the said court, at the first regular term thereafter, shall make a list of the names of the persons controlling such public free school lands, the number of sections so controlled by each person, and the aggregate amount due from each person at the rate of $25 for each section so inclosed and controlled; which list shall be recorded by the clerk of said court, and a certified copy thereof forwarded by him to the comptroller of public accounts, and a like copy delivered to the collector of taxes for said county.

"Sec. 4.   The collector of taxes, on the receipt of such list, shall proceed to collect the same under the same provisions and penalties as is imposed by law for the collection of taxes.

"Sec. 5.   That all moneys collected under the provisions of this act shall be paid by the collector into the state treasury and constitute a part of the available school fund; provided, that the state may resume control of said land at any time."

The terms of this statute characterize the duty, obligation or debt from the citizen to the state contemplated by its provisions as a "rental,"— "rent;" and it provides the mode for its enforcement by the summary modes, and under "the same provisions and penalties as is imposed by law for the collection of taxes."

If, notwithstanding the terms and forms of expression employed

in the statute to designate the nature of such duty, obligation or debt, as the case may be, it be, in fact, an assessment by the legislature of a tax upon the citizen, it would be appropriate and lawful to apply to its collection the same statutory remedies which apply to ordinary taxation; such remedies, however, would be in manifest derogation of constitutional right, where a citizen's rights to his property are destroyed under them, without a hearing or notice, in cases where the right to sell his property depended upon the ascertainment of disputable facts.

It is not questioned, nor is it questionable, that the summary modes of collecting taxes by the authority of the state do not come within those constitutional guaranties which limit the power of the government to take a citizen's property without due process of law. In the case of Hager v. Supervisors of Yolo, 47 Cal., 222, 233, it was said by Crockett, Justice: "Nor does the enforcement of a valid tax, by whatever method, constitute a taking of property without due process of law, in the sense of the constitution; nor is it a taking of private property for public use, within the purview of that instrument." People v. Mayor, etc., of Brooklyn, 4 Comst., 419; Emery v. S. F. Gas Co., 28 Cal., 345; Sears v. Cottrell, 5 Mich., 251; Murray's Lessee v. Hoboken Land Imp. Co., 18 How. (U. S.), 272; Cooley on Taxation, 37.

But, beyond any doubt, the duty or obligation imposed by the act upon the person or persons who inclose or fence in public free school lands to pay to the state $25 for each section, as an annual rental, is in substance, as it is in the terms used by the law to describe it, a legal obligation to pay a specified sum of money in consideration of enjoying, with the state's permission, the exclusive use of a portion of the public free school land; it is that which it purports on its face to be, a debt or obligation due under a statutory contract between the citizen and the state for rent, and is not a tax imposed by the state upon its citizens. "Taxes are defined as being the enforced proportional contribution of persons and property, levied by the authority of the state for the support of the government, and for all public needs." Cooley on Taxation, 1. The liability of the citizen to pay money to the state under the conditions which the statute in question contemplates, does not arise from a legislative assessment upon the persons who are designated by it for a contribution of money; the statute does not levy any contribution whatever, either upon persons or property, but the liability to pay any money whatever under its provisions depends upon the acceptance by the citizen who is to be affected by it, of the offer of the

state to lease to him certain portions of its public domain. It is clear that the liability of a person to pay money under the law in question is not a tax, but grows out of a contract with the government.

Section 19 of article I of the constitution provides that "no citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

Mr. Webster's definition of "the law of the land," given in his argument of the Dartmouth College case, is accepted by text-writers on contitutional law as admirable. It is this: "By the law of the land is most clearly intended the general law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property and immunities under the protection of general rules which govern society. Everything which may pass under the form of an enactment is not the law of the land." Mr. Justice Johnson, of the supreme court of the United States, in Bank of Columbia v. Okely, 4 Wheat., 235, considering the meaning of those words in constitutions of some of the states, said that "the good sense of mankind has at length settled down to this — that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice."

When, therefore, by the exertion of legislative authority, a statute is enacted which prescribes modes and remedies having for their object, and which in their operations work a transfer of property from one individual without his consent, to another, whenever such proceedings thus to be had under the statute are in contravention of the settled maxims of general law, and do violence to those safeguards for the protection of individual rights which those principles and maxims of law prescribe for cases to which the one in question belongs, then such legislation is unconstitutional because not compatible with "the law of the land." The legislature is wholly powerless to invest such an enactment with the authority of law; it does not become a part of "the law of the land" in virtue of its enactment; for, as was said by Bronson, J., in Taylor v. Porter, 4 Hill, 140, "the words 'by the law of the land,' as used in the constitution do not mean a statute passed for the purpose of working the wrong."

The statute under consideration provides for fixing the liability of a lessor for rent by the *ex parte* report to the county commission-

ers' court of all the facts on which his liability, if it exists, depends, of which he has no notice; upon that report follows the edict of condemnation and of sale of his property without writ or process. Thus is denied the citizen the opportunity to know of the proceedings against him which he is concerned to resist; also the right to be heard in his defense, and to have determined the facts of the case by a jury of his peers.

The statute attaches conclusive effect to the official *ex parte* statement in writing of the county surveyor to the commissioners' court, in respect to the liability of any person he may see proper to suspect or accuse of being indebted to the state for having had the exclusive use of public free school lands, notwithstanding no proceedings by information, charge or account in behalf of the state has been made; evidence against the alleged delinquent debtor of this character, under the statute, becomes at once, too, a statutory judgment, conclusive of the truth of the facts recited by it, and a sale of the property of the accused made under it transfers the title to it to the purchaser.

Under this statute, the form of evidence, Proteus-like, is transformed to that of a solemn decree, and the right to be confronted by the one and to resist the other is denied to the citizen as effectually as though the instrumentalities employed against him consisted of inquisitorial agencies rather than such as are exacted in this state by the genius of a free constitution, the common law of England, and statutes which accord only with open investigation, and a full hearing before condemnation.

Appropriate illustrations are to be seen, and pertinent analogies drawn from the application which courts have made of the constitutional guaranty under consideration in restricting the legislative power to establish rules of evidence for the trial of causes in judicial proceedings. Treating of which subject, Judge Cooley in his work on Constitutional Limitations (4th ed.), 458, says: "But there are fixed bounds to the power of the legislature over this subject which cannot be exceeded. As to what shall be evidence, and which party shall assume the burden of proof in civil cases, its authority is practically unrestricted, so long as its regulations are impartial and uniform; but it has no power to establish rules which, under pretense of regulating the presentation of evidence, go so far as altogether to preclude a party from exhibiting his rights."

"Except in those cases which fall within the familiar doctrine of estoppel at the common law, or other cases resting on like reasons, it would not, we apprehend, be in the power of the legislature to

declare that a particular item of evidence should preclude a party from establishing his rights in opposition to it. In judicial investigations the law of the land requires an opportunity for a trial; and there can be no trial if only one party is suffered to produce his proofs. . . . A statute, therefore, which should make a tax deed conclusive evidence of a complete title, and preclude the owner of the original title from showing its invalidity, would be void, because being not a law regulating evidence, but an unconstitutional confiscation of property. And a statute which should make the certificate or opinion of an officer conclusive evidence of the illegality of an existing contract would be equally nugatory."

The disparagement, endangering and destruction of rights of litigants to which such legislative enactments as are above referred to, are not so gross and palpable, nor so obviously contrary to the established course of justice as administered in the other states of the Union and in this state, as would be a statute which provided for the *ex parte* determination, by a ministerial officer of the state, of facts on which a citizen's liability for a debt depended, without notice, without a hearing or trial of any kind, and which determination should operate as a judgment through which his property may be sold to satisfy such supposed liability.

In the case of East Kingston *v.* Towle, 48 N. H., 57; S. C., 2 Am. Rep., 174, it was decided that an act to authorize persons whose sheep are killed by dogs to present their claim to the selectmen of the town for allowance and payment by the town, and giving the town after payment an action against the owner of the dog for the amount so paid, is void as taking away trial by jury, and as authorizing the selectmen to pass upon one's rights without giving him an opportunity to be heard.

The principle decided in that case finds proper application to this, and we conclude from the authorities we have cited and the reasons given in this opinion, that the remedy which the statute provides for the enforcement of the collection of the rent due to the state is unconstitutional, and that the court erred in the charge given to the jury.

We are of the opinion that the judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted February 26, 1883.]