**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 92-7255

---

KATHERINE A. McMURTRAY,

Plaintiff-Appellant,

versus

J. MAC HOLLADAY, Individually, ET AL.,

Defendants-Appellees.

******************************************************************

---

No. 93-7002

---

RICHARD L. BUFORD,

Plaintiff,

versus

J. MAC HOLLADAY, ET AL.,

Defendants.

\*          \*          \*          \*          \*          \*

GEORGE A. GEORGE,

Plaintiff-Appellant,

versus

J. MAC HOLLADAY, Individually, ET AL.,

Defendants-Appellees.

\*          \*          \*          \*          \*          \*

GINGER CROCE,

Plaintiff-Appellant,

versus

J. MAC HOLLADAY, Individually, ET AL.,

Defendants-Appellees.

---

Appeals from the United States District Court
for the Southern District of Mississippi

---

(December 28, 1993)

Before WISDOM, KING, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

This appeal is comprised of three separate lawsuits. Two of the suits were tried together in the same district court; the other was tried in the same district but by a different court. In each suit, a former Mississippi state employee sued several state officers alleging that his/her constitutionally protected property right in employment with the state was extinguished without due process of law. Both district courts granted the state officers summary judgment. Because we find no genuine issues of material fact exist, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Under Mississippi law, state employees are categorized in one of two ways: "state service" employees or "nonstate service" employees. MISS. CODE ANN. § 25-9-107(b),(c). State service employees are afforded the protections of the state personnel system. MISS. CODE ANN. § 25-9-121. Accordingly, no state service employee in Mississippi:

> may be dismissed or otherwise adversely affected as to compensation or employment status except for inefficiency or other good cause, and after written notice and hearing within the department, agency or institution as shall be specified in the rules and regulations of the state personnel board complying with due process of law.

MISS. CODE ANN. § 25-9-127. A state service employee also "may appeal his dismissal or other action adversely affecting his employment status to the employee appeals board" and ultimately to the courts. MISS. CODE ANN. § 25-9-131(1),(2). Nonstate service

2

employees are not covered by the state personnel system. MISS. CODE ANN. § 25-9-123.

The appellants, Katherine McMurtray, George George, and Ginger Croce, were employees with Mississippi's Department of Economic Development (DED) until October 1988. At that time, the appellants were terminated as part of a legislatively mandated reorganization of the DED. Specifically, in May 1988, the State of Mississippi enacted Senate Bill 2925 (the Act).[1] The Act, effective July 1, 1988, abolished the state's Research and Development Center (R&D Center), reorganized its DED, and established the University Research Center (URC).[2] A portion of the R&D Center's duties were

---

[1] The Act was later codified at MISS. CODE ANN. § 57-1-1 et seq.

[2] In particular, Section 1 of the Act reads in pertinent part:

SECTION 1.(1) The Mississippi Research and Development Center is hereby abolished from and after July 1, 1988. All of the functions of the center shall be transferred on that date to the Mississippi Department of Economic Development or to the University Research Center which is created in Section 3 of this act.

(2)(a) From and after July 1, 1988, the duties and responsibilities of the Research and Development Center which are depicted organizationally in the 1989 fiscal year budget request of the Research and Development Center and which are performed by the Forecast and Analysis Division, the Administration Division, the Government Services Division and the Data Services Division except as provided in subsection 3(b) shall be transferred to the University Research Center.

(b) From and after July 1, 1988, the duties and responsibilities of the Research and Development Center not included in the transfer described in paragraph (a) except as provided in (3)(c) of this subsection shall be transferred to the Mississippi Department of Economic Development.

transferred to the DED, and the remaining duties were transferred to the URC.  The Act also transferred employees of the R&D Center to the DED and the URC in accordance with the transfer of duties.

To facilitate the reorganization of the DED, the Act provided in Section 28.(6):

> For a period of one (1) year after the effective date of this act the personnel actions of the department shall be exempt from State Personnel Board Procedures in order to give the department flexibility in making an orderly, effective and timely transition to the mandated reorganization.

The appellee, J. Mac Holladay, the Executive Director of the DED, interpreted these sections of the Act to mean that, between July 1, 1988, and July 1, 1989, state service employees with the DED lost the protection of the state personnel system, thereby enabling the DED to terminate its employees at will without providing written notice and a hearing.  On October 26, 1988, Holladay therefore

---

(3)(a) All personnel of the Mississippi Research and Development Center shall be transferred to the Department of Economic Development or to the University Research Center according to the transfer of their duties pursuant to this section.

* * *

(d) It is the intention of the Legislature that there be a reduction in personnel where there is a duplication of effort as a result of the transfers required by this subsection.  The Department of Economic Development in its reorganization pursuant to this act may utilize savings realized from personnel attrition and other economies to reallocate and reclassify positions within the department, subject to the approval of the State Personnel Board.

(e) All personnel transferred to the University Research Center shall become subject to all personnel and compensation policies of the Board of Trustees of State Institutions of Higher Learning; however, anyone so transferred shall retain all of the protection and benefits to which they have been entitled under the state personnel system.

4

informed DED employees that "the property interest of employees of the Mississippi Department of Economic Development has been eliminated for a period of one year beginning July 1, 1988." In addition, he informed them that each position at the DED had been eliminated and replaced with entirely different positions. DED employees, he said, would have the "first opportunity" for re-employment at the restructured DED, and would be allowed to apply for a maximum of two positions by October 28, 1988.

McMurtray, George, and Croce applied for positions in the newly organized DED but were not hired. In November 1988, McMurtray filed suit in federal district court against Holladay and several other DED officials, in their individual capacities, alleging that she had a constitutionally protected property right in employment with the DED which Holladay extinguished without due process of law. Holladay filed a motion for summary judgment, which the court granted in March 1992. George and Croce, meanwhile, also filed suit[3] against Holladay, et al., in April 1989, alleging that they, too, had a constitutionally protected property right in employment with the DED which Holladay extinguished without due process of law. Holladay again filed a motion for summary judgment, which the district granted in February

---

[3]The suit was filed in the same federal district, the Southern District of Mississippi, but in a different court.

1992.  See Buford v. Holladay, 791 F. Supp. 635 (S.D. Miss. 1992).[4] McMurtray, George, and Croce appeal together.

## II. DISCUSSION

### A. Standard of Review

We review a summary judgment de novo, sitting as if we were the district court itself.  D.E.W., Inc. v. Local 93, Laborers' Int'l. Union, 957 F.2d 196 (5th Cir. 1992).  Therefore, summary judgement is appropriate if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).

### B. Status of the Appellants' Property Interests

The appellants' first contention is that Holladay's summary termination of them was a violation of their due process rights under the United States Constitution because Section 28.(6) of the Act did not extinguish their property interest in employment with the DED.  The United States Constitution is not the source of property interests.  Rather, it merely provides procedural protections against the invasion of an acquired property interest. U.S. CONST. amend. XIV, § 1; Board of Regents v. Roth, 408 U.S. 564, 576, 92 S. Ct. 2701, 2708 (1972).  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985); see also Schaper v. City of Huntsville,

---

[4]The district court's opinion in McMurtray v. Holladay, Civ. Action No. J88-0619(W) (S.D. Miss. Mar. 31, 1992), was not published.

6

813 F.2d 709, 713 (5th Cir. 1987). Once bestowed, property interests may not be extinguished by the state without adherence to minimal due process standards. Boucvalt v. Board of Comm'rs, 798 F.2d 722, 728 (5th Cir. 1986). But the legislature, which creates the property interest in the first place, may also take it away: "The procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.'" Atkins v. Parker, 472 U.S. 115, 129, 105 S. Ct. 2520, 2529 (1985) (quoting Richardson v. Belcher, 404 U.S. 78, 81, 92 S. Ct. 254, 257 (1971)); see also Gattis v. Gravett, 806 F.2d 778, 781 (8th Cir. 1986) ("the legislature which creates a property interest may rescind it, whether the legislative body is federal or state and whether the interest is an entitlement to economic benefits, a statutory cause of action or civil service job protections").

In this case, the appellants and Holladay agree that the appellants had a constitutionally protected property interest in their employment with the DED, at least through June 30, 1988. The dispute arises over whether the Mississippi Legislature abrogated that property interest with enactment of Section 28.(6) of the Act. The appellants stress that their property interest arose out of their state service status, MISS. CODE ANN. § 25-9-107(b), and the concomitant procedural protections of the state personnel system. MISS. CODE ANN. §§ 25-9-121, 25-9-127. Therefore, the appellants argue, if the Legislature intended to extinguish their property interests, it would have to explicitly abolish the state service

7

status of all employees at the DED.  Then, and only then, could the DED terminate its employees at will, without adhering to procedural due process as required by § 27-9-127.

As for Section 28.(6), which afforded the DED a one year exemption from "State Personnel Board Procedures," the appellants insist that this provision does not explicitly abolish, or even affect, their state service status.  Instead, they claim that the provision goes no further than it says, that the DED is exempt from the State Personnel Board Procedures.  Furthermore, they argue, Section 1.(3)(d) permitted the DED, in its reorganization, to reclassify "positions" within the DED but subject to an important limitation: "the approval of the State Personnel Board." Holladay's, and both the district courts', interpretation of Section 28.(6) is totally inconsistent with Section 1.(3)(d), they claim.  While Section 28.(6) fails to explicitly address the employees' state service status, Section 1.(3)(d) places their "positions" squarely within the control of the State Personnel Board and not the DED.  Thus, they conclude, the Act never extinguished their property interests.

The appellants' contention is not meritless.  But it begs an important question: what exactly does a department's exemption from such procedures ultimately mean?  Our reading of the relevant statutes tells us that, in fact, the Legislature intended to suspend DED employees' property interests for one year.  Under Mississippi law, the State Personnel Board, which is created under MISS. CODE ANN. § 25-9-109, is charged with "[a]dopt[ing] and

8

amend[ing] policies, rules and regulations establishing and maintaining the State Personnel System." MISS. CODE ANN. § 25-9-115(c). In effect, the State Personnel Board represents the state personnel system, meaning any of the system's rules, regulations, or procedures are also the Board's. The state personnel system requires that, for a state service employee to be terminated, the department (or other entity) must have good cause and also provide the employee with written notice and a hearing. MISS. CODE ANN. § 25-9-127. Therefore, if a department (or other entity) is exempt from the state personnel system's rules and regulations, then that department is free to terminate its employees at will, without notice or a hearing.

With regard to the alleged contradiction between Section 28.(6) and Section 1.(3)(d), we point out that the Act was limiting the DED's ability to reclassify "positions" and not its authority to terminate personnel. The Legislature in Section 1.(3)(d) merely was reaffirming existing Mississippi law with regard to reclassifying state service positions: the board "[r]ecommend[s] policies and procedures for the establishment and abolishment of employment positions within state government." MISS. CODE ANN. § 25-9-115(i) (emphasis added). The provision is unrelated to the DED's personnel responsibilities, in stark contrast to Section 28.(6). That provision exempts the "personnel actions" of the DED "from State Personnel Board Procedures in order to give the department flexibility in making an orderly, effective and timely transition

9

to the mandated reorganization."  As one of the district courts

stated below:

> The difference between the two sections is the difference between a job classification and the person holding the job classification.  Under Section 28(6), a person holding a particular job classification was subject to termination, but under Section 1(3)(d), the job classification could not be modified without compliance with the procedures of the State Personnel Board.

Buford, 791 F. Supp. at 642.

We agree with the appellants that the Act does not explicitly

provide that DED employees lost their state service status.[5]  The

Legislature certainly could have been more precise.  Nonetheless,

the logical extension of Section 28.(6), when read in conjunction

with other relevant portions of the Act and the Mississippi Code,

---

[5]The appellants further submit that, in addition to its absence of explicit language, the Act as a whole evinces the legislature's intent to preserve the property interests of state service employees, such as those with the DED.  Specifically, Section 1.(3)(e) of the Act extended the protections of the state personnel system to those employees transferred from the R&D Center, which had carried state service status, to the URC, which currently carries nonstate service status.  See MISS. CODE ANN. § 25-9-107(c)(vii).  The appellants maintain that this is evidence of the legislature's general interest in preserving property interests rather than limiting them.  The appellants' argument is unconvincing, and possibly counterproductive to their effort.  The legislature's affirmative efforts to extend protections to these employees -- and not DED employees -- strongly suggest that, when it wants to ensure that employees retain their state service status, the legislature is clear and unambiguous about its intentions.

Finally, the appellants also ask us to consider two other matters in determining the status of their property interests: the actions of the DED before and after enactment of the Act, and two conflicting interpretations of the Act by the office of the state's attorney general.  While such evidence may suggest that the state government had difficulty interpreting the Act, we refuse to consider such matters.  Our resolution of this appeal will rest solely on interpreting the Mississippi Legislature's intentions, as embodied in the Act.

is that the legislature intended to suspend the property interests of DED employees for one year.  Because no genuine issue of material fact exists as to whether Section 28.(6) of the Act extinguished the appellants' property interest, summary judgment for Holladay was appropriate.

## C. Legislative Due Process

Finding that the appellants property interest was extinguished by the Act, we must next consider the appellants' contention that they nonetheless were denied due process.  The Supreme Court long ago established that, when a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due.  Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445-46, 36 S. Ct. 141, 142-43 (1915); Logan v. Zimmerman Brush Co., 455 U.S. 422, 433, 102 S. Ct. 1148, 1156 (1982); see also Jackson Court Condominiums v. City of New Orleans, 874 F.2d 1070, 1074 (5th Cir. 1989); Gattis, 806 F.2d at 781.

The appellants claim that the Act affected a specific, and not a general, class of people: the 29 individuals who lost their jobs at the DED through reorganization.  We disagree.  While those 29 individuals (including the three appellants) may have lost their jobs, the Act was intended to affect every employee at the DED, which qualifies as a general class of people.  See O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 799-801, 100 S. Ct. 2467, 2483 (1980) (Blackmun, J., concurring) ("[w]hen governmental action affects more than a few individuals, concerns beyond economy,

11

efficiency and expedition tip the balance against finding that due process attaches").  Because no genuine issue of material exists as to whether the appellants were denied legislative due process, summary judgment was appropriate.

### D. Monetary Compensation

The appellants' last contention is that, when the state extinguished their property rights, the Act constituted a "taking," and they should therefore be justly compensated pursuant to the Fifth Amendment.  Even if the Act amounted to a "taking" under the Fifth Amendment, and we do not conclude that it does, the appellants' claim would be barred because under the Eleventh Amendment, a citizen may not sue his own state in federal court. U.S. CONST. amend. XI; Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S. Ct. 900, 906 (1984).  Therefore, the portion of the appellants' suit regarding monetary compensation is barred.[6]

### III. CONCLUSION

The summary judgments granted below were appropriate and are therefore AFFIRMED.

---

[6]The portion of the appellants' suit regarding the status of their property interest and whether they were denied legislative due process is not similarly barred because Congress has the power with respect to the rights protected by the Fourteenth Amendment to abrogate Eleventh Amendment immunity.  See U.S. CONST. amend. XIV, § 5; Fitzpatrick v. Bitzer, 427 U.S. 445, 451-56, 96 S. Ct. 2666, 2669-71 (1976).  Congress granted federal courts jurisdiction to hear private suits against states involving constitutionally protected property interests under 42 U.S.C. § 1983.