TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00019-CV






Appellants, Dr. Don Brantley, Belinda Castillo, Dr. Corinne Alvarez-Sanders and

Patricia Logterman// Cross-Appellants, Texas Youth Commission; Cherrie Townsend

in her official capacity as Executive Director


v.


Appellees, Texas Youth Commission; Cherrie Townsend in her official capacity as
Executive Director// Cross-Appellees, Dr. Don Brantley, Belinda Castillo,

Dr. Corinne Alvarez-Sanders and Patricia Logterman





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-GN-09-001812, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





O P I N I O N


 After allegations surfaced that employees of the Texas Youth Commission (TYC)
had sexually abused youths housed in that agency's facilities, the Eightieth Texas Legislature
enacted Senate Bill 103, which amended a number of statutory provisions governing that agency. (1)
In section 37 of S.B. 103, the Legislature changed the basis of employment at TYC, which prior
statutes had previously made for-cause, to at-will. (2) This appeal concerns attempts by a group of
present and former TYC employees to challenge the constitutionality of that change.

 Four current or former TYC employees who had begun working at the agency
before section 37 took effect--two of whom allegedly resigned under threat of termination before
section 37 took effect, one of whom was terminated after section 37 took effect, and one of whom
continues to work for the agency (collectively, Plaintiffs)--sued TYC and its executive director
seeking declaratory, injunctive, and monetary relief based principally on the allegation that
section 37 unconstitutionally deprived them of property rights in their employment. TYC and its
executive director (collectively, the TYC Defendants) interposed a plea to the jurisdiction, which the
district court granted in part and denied in part. Both Plaintiffs and the TYC Defendants appeal the
district court's order. We will affirm the district court's order in part and reverse in part.

 

STANDARD OF REVIEW A plea to the jurisdiction challenges a trial court's authority to decide the
subject matter of a specific cause of action. See Texas Dep't of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the
plaintiff's live pleadings. Id. at 226. The plaintiff has the initial burden of alleging facts that
affirmatively demonstrate the trial court's jurisdiction to hear the cause. Id. (citing Texas Ass'n of
Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this
burden is a question of law that we review de novo. Id. We construe the pleadings liberally, taking
them as true, and look to the pleader's intent. Id.; Texas Logos, L.P. v. Brinkmeyer, 254 S.W.3d 644,
659 (Tex. App.--Austin 2008, no pet.). Mere unsupported legal conclusions are insufficient. See
Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality, 307 S.W.3d 505, 515-16
& nn.7 & 8 (Tex. App.--Austin 2010, no pet.). If the pleadings fail to allege sufficient facts to
affirmatively demonstrate the trial court's jurisdiction but also fail to affirmatively demonstrate
incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should
be afforded the opportunity to amend. Miranda, 133 S.W.3d at 226-27. If, on the other hand, the
pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be
granted without allowing the plaintiff an opportunity to amend. Id. at 227.

 We must also consider evidence the parties presented below that is relevant to the
jurisdictional issues, Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000), including
evidence that a party has presented to negate the existence of facts alleged in the plaintiff's pleading.
See Miranda, 133 S.W.3d at 227; see also Combs v. Entertainment Publ'n, Inc., 292 S.W.3d 712,
719 (Tex. App.--Austin 2009, no pet.) (summarizing different standards governing evidentiary
challenges to the existence of pleaded jurisdictional facts where such facts implicate both jurisdiction
and the merits versus where they implicate only jurisdiction). Our ultimate inquiry is whether
the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to
the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's
subject-matter jurisdiction. See Miranda, 133 S.W.3d at 226; Creedmoor-Maha, 307 S.W.3d at 513,
516 n.8. This is a question of law that we review de novo. See Miranda, 133 S.W.3d at 226;
Creedmoor-Maha, 307 S.W.3d at 513, 516 n.8.


STATUTORY AND PROCEDURAL CONTEXT

 Before turning to the record in this appeal, it is helpful first to briefly review the
changes to the statute and TYC procedures that provide the context for Plaintiffs' claims and
the parties' appellate issues. Prior to being amended by section 37 of S.B. 103, section 61.035 of
the human resources code provided that the TYC "may remove any employee for cause." The
United States Supreme Court has held that state laws conferring to public employees more than
a unilateral expectation of continued employment create a property right in that employment, such
that an employee must be afforded procedural due process before being involuntarily terminated,
including receiving notice of the grounds for termination and an opportunity to respond. See,
e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-46 (1985). To implement these
requirements, TYC had promulgated policies and procedures requiring the agency, when terminating
an employee, to first provide the employee a written recommendation-to-terminate letter
giving notice of the basis for the proposed discharge and of the opportunity to be heard by the
decision-maker prior to a final decision. If the recommendation was adopted and the employee was
terminated, the employee then had access to a grievance process that entailed an evidentiary hearing
in which TYC had the burden of proof as to the basis for termination. After hearing evidence, the
hearing officer would then prepare a proposal for decision, including proposed findings of fact and
conclusions of law, and transmit it to TYC's executive director. The executive director then made
the final decision on the grievance, and could either affirm the termination or reinstate the employee
with or without backpay and with or without discipline or other conditions.

 Section 37 of S.B. 103 amended the human resources code to replace the "for cause"
requirement with a provision stating that "an employee of the commission is employed on an at-will basis." (3) The Legislature also mandated that TYC "establish procedures and practices governing:
(1) employment-related grievances submitted by commission employees; and (2) disciplinary
actions within the commission, including a procedure allowing a commission employee to elect to
participate in an independent dismissal mediation if the employee is recommended for dismissal." (4)
Section 37, along with the other provisions of S.B. 103, took effect on June 8, 2007. (5) 

 After section 37 took effect, TYC, although retaining a grievance process for
employees who are involuntarily terminated, amended its policies and procedures to emphasize that
the process "does not create a property interest in agency employment, nor is it a promise or
guarantee of any particular procedure." The agency also changed its grievance process to provide
that a termination decision made directly by the executive director--i.e., the same official who would
serve as the ultimate decisionmaker on any employee grievance concerning the termination--was
"final and not appealable" via that administrative process.


THE RECORD

 The record in this case consists of Plaintiffs' live petition at the time of the hearing
on the TYC Defendants' plea to the jurisdiction, (6) evidence that the TYC Defendants attached to their
plea, and evidence that Plaintiffs attached to their response.

Plaintiffs' petition

 Two of the four Plaintiffs--Patricia Logterman and Dr. Corinne Alvarez-Sanders--allege that on April 19, 2007 (which, it is undisputed, is the day on which S.B. 103 passed
the Texas Senate), they were each summoned to the office of TYC's then-acting chief of staff,
Dimitria Pope, and given the choice of either resigning from their jobs with the agency or being
fired. "When asked why," the two allege, "Pope replied that Plaintiffs would be told if and when
they chose to be terminated." "Threatened with possible investigation by the Texas Rangers and
the Office of the Inspector General," Logterman and Alvarez-Sanders further assert, they "chose
to be constructively discharged rather than face the possibility of being vilified in the media." They
add that although they "subsequently requested to withdraw their resignations, Pope denied their
requests" and similarly denied grievances each subsequently attempted to file.

 A third Plaintiff, Dr. Don Brantley, alleges that "Pope also requested [that he]
quit or be fired on April 19, 2007." In contrast to Alvarez-Sanders and Logterman, Brantley
demanded "due process and a hearing." In response, Brantley complains, TYC did not proceed with
terminating him but instead suspended him until after section 37 took effect. Then, in July 2007,
TYC and its acting executive director at the time, Ed Owens, "informed Dr. Brantley that
because Senate Bill 103 took away his status as a for-cause employee, he was not entitled to
due process or a termination hearing," and "then terminated Dr. Brantley without affording him
due process or a hearing."

 The fourth Plaintiff, Castillo, alleges that she has "been continuously employed by
the TYC from 1994 to the date of the filing of this action." Castillo asserts that, S.B. 103
notwithstanding, she "was and remains at all times a for cause employee" but that "[t]he TYC,
however, currently considers [her] to be an at will employee, despite the fact that she was employed
by the TYC before the effective date of Senate Bill 103." (7) 

 Based on these factual allegations, Plaintiffs collectively purport to assert three basic
sets of liability theories. First, Alvarez-Sanders and Logterman allege that (1) they were for-cause
employees as of the date of their resignations in April 2007; (2) they were constructively discharged;
and (3) TYC discharged them without complying with its procedures governing involuntary
termination of for-cause employees. Consequently, Alvarez-Sanders and Logterman reason, they
were "wrongfully terminated" by being dispossessed of their "vested property interest" in their jobs
without due process.

 Second, all four Plaintiffs pled that section 37 is invalid and unenforceable because
it violates constitutional prohibitions against retroactive legislation, ex post facto laws, and bills
of attainder. (8) It thus follows, Plaintiffs further assert, that section 37 was ineffective to change
their respective employment statuses from for-cause to at-will. Also, predicated on these assertions,
Brantley further alleges that he continued to be a for-cause employee even after section 37's effective
date and that he was "wrongfully terminated" without adherence to the procedural protections to
which for-cause TYC employees were entitled.

 Third, Alvarez-Sanders, Logterman, and Brantley allege that in connection with the
complained-of personnel actions, Pope and Owens "made several public and private defamatory
statements" regarding them. In particular, the former employees complain, their TYC personnel files
were "coded" to reflect that Alvarez-Sanders and Logterman had "resigned in lieu of termination"
and that all three were "ineligible for rehire without reason." They pled that these "defamatory
statements" have caused them to "be subject to public ridicule and hatred and . . . suffer severe
damage to their business and personal reputations."

 Based on these allegations, Plaintiffs sought relief from the TYC Defendants (9) that
centered on two requested declarations under the Uniform Declaratory Judgments Act (UDJA): (10)

 a declaration that section 37, which "attempted to remove the 'for cause' status of TYC
employees employed before that [June 8, 2007] date," violates constitutional prohibitions
against retroactive legislation, ex post facto laws, and bills of attainder; and


 a declaration "that as a matter of law Plaintiffs were 'for cause' employees . . . after June 8,
2007, the effective date[] of Senate Bill 103."




Additionally, Alvarez-Sanders and Logterman sought "a declaratory judgment as to their 'for cause'
status as TYC employees at the time of their termination, April 19, 2007." With these declarations,
Plaintiffs prayed for attorney's fees as the UDJA permits. (11)

 Plaintiffs further requested "prospective injunctive and/or equitable relief" barring
"TYC and its officials from enforcing Section 37 of Senate Bill 103" and "the TYC administrative
regulations that [are] derived from Section 37." Finally, the three former employee Plaintiffs prayed
for money damages, including compensation for injury to reputation, lost earnings and earning
capacity, and past and future mental anguish, based on theories of wrongful discharge, defamation,
and the "taking" of their "property interests" in their TYC employment.

 

"Plea to the jurisdiction and motion for summary judgment"

 The TYC Defendants responded with a single filing styled as a "Plea to the
Jurisdiction and Motion for Summary Judgment." (12) In a section of the document titled "Plea to the
Jurisdiction," the TYC Defendants asserted the following grounds challenging the district court's
subject-matter jurisdiction over the claims against them:



 Plaintiffs' claims for money damages from the TYC Defendants implicate sovereign
immunity and they have failed to plead a valid waiver of such immunity. In particular, the
UDJA does not waive immunity to the extent of declaring a right to money damages,
Plaintiffs have not alleged any valid takings claim, and the Tort Claims Act does not waive
immunity as to intentional torts like defamation.

 While the Texas Constitution authorizes "direct claims for equitable relief against
governmental agencies for violations of . . . the Texas Bill of Rights," Plaintiffs have not
asserted a request for equitable relief to remedy their alleged wrongful-termination/due-process violation concerning Alvarez-Sanders, Logterman, and Brantley.

 Although "TYC concedes that it is a proper party to this suit and that the [UDJA] waives its
immunity" to the extent "Plaintiffs' declaratory judgment action challenges the validity of
[section 37]," sovereign immunity bars any declaratory claims against TYC concerning
alleged ultra vires conduct, which must instead be asserted against the executive director in
his official capacity.

 In any event, none of the four plaintiffs possess a justiciable interest that could support their
claims challenging the constitutionality of section 37:

 Alvarez-Sanders and Logterman lack standing because they resigned prior to
section 37's effective date and "have simply not alleged any future harm" that could
give rise to a live justiciable interest on their part.



 

 Castillo possesses no ripe justiciable interest.

 Brantley's constitutional challenges are moot because he received all of the process
to which he would have been entitled as a for-cause TYC employee.

 The declaratory claims asserted by Alvarez-Sanders, Logterman, and Brantley are also barred
because they seek declarations as to issues that are already presented by their wrongful-termination claims. Additionally, because the district court lacks subject-matter jurisdiction
over these plaintiffs' wrongful-termination claims, there is no justiciable controversy that
could support their declaratory claims.




 In the "summary judgment" portion of the filing, the TYC Defendants asserted that
"Plaintiffs' declaratory judgment claim against TYC [and its executive director], in her official
capacity . . . fails as a matter of law because [section 37] is not an ex post facto or retroactive law."
In support of these grounds, the TYC Defendants asserted that the ex post facto law prohibition
applies only to penal statutes, Rogers v. Tennessee, 532 U.S. 451, 456 (2001); Barshop v. Medina
County Underground Water Dist., 925 S.W.2d 618, 633-34 (Tex. 1996), and that Plaintiffs
possessed no vested property right in the Legislature's continuing to grant them for-cause
employment status, only a mere expectancy based on the anticipated continuation of current law. 
See, e.g., McMurtray v. Holladay, 11 F.3d 499, 504 (5th Cir. 1993) ("The Supreme Court long
ago established that, when a legislature extinguishes a property interest via legislation that affects
a general class of people, the legislative process provides all of the process that is due.") (citing
Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982); Bi-Metallic Inv. Co. v. State Bd. of
Equalization, 239 U.S. 441, 445-46 (1915)).

 In support of their plea to the jurisdiction, the TYC Defendants attached evidence that
included, of relevance here, an affidavit from Dewey Poteet, a TYC in-house attorney who advises
the agency on personnel matters. (13) Attached to Poteet's affidavit were copies of TYC's policies
and procedures governing grievances by involuntarily terminated employees both before and after
section 37's implementation, previously described. Also attached was correspondence to and from
the agency relating to Brantley's termination and a grievance that he subsequently attempted to file
with the agency. The documents and Poteet's testimony reflect that:



 On April 19, 2007, Pope provided Brantley a two-page recommendation-to-terminate letter
advising him of what Pope perceived as several failures by Brantley to perform four
"essential job functions" and her conclusion that his "continued employment is not in the
best interest of the agency as it moves toward reform." The letter further notified Brantley
that he had the right to raise with Owens "any facts regarding why you believe your
employment should not be terminated under these circumstances" before "any decision is
made regarding your termination."

 On May 1, 2007, an attorney for Brantley wrote Owens asserting that the April 19, 2007
letter was insufficiently clear and specific regarding the factual bases for Brantley's
termination, and requesting clarification.

 On May 15, 2007, Pope responded with a four-page amended recommendation-to-terminate
letter that cited specific examples of what Pope regarded as Brantley's resistance to the
reform initiatives of his superiors, failures to promptly respond to reports of physical abuse
of youth in TYC facilities, (14) and poor judgment in promoting a TYC employee who was later
disciplined for failure to "detect and address [a] pattern of sexual abuse at his facility."

 On May 25, 2007, Brantley personally wrote Owens a seventeen-page letter taking issue with
Pope's assertions. 

 On the same day, Brantley and his attorney met with Owens. During this meeting, according
to Poteet, "both Dr. Brantley and Mr. Durst [his attorney] addressed the recommendation to
terminate and the reasons why they urged rejection of the recommendation."

 Thereafter, as previously noted, S.B. 103 took effect on June 8, 2007. Subsequently, TYC
amended its grievance policies, effective June 20, 2007, to eliminate the right to a grievance
for employees who are terminated by the executive director.

 On June 22, 2007--two days after TYC amended its grievance policies to eliminate
the right to a grievance for employees who (like Brantley) were terminated by the
executive director--Owens wrote Brantley advising him that he was upholding Pope's
recommendation to terminate his employment, and terminated Owens on that day. 
According to Poteet, "Dr. Brantley's response to the recommendation, both verbal and
written, and the verbal and written response of Dr. Brantley's attorney, were considered
by Mr. Owens before he acted on and accepted Ms. Pope's recommendation to terminate
Dr. Brantley's employment."




 Following his termination, the TYC Defendants' evidence reflects, Brantley
attempted to file a grievance regarding his termination, as had been permitted under the agency's
prior policies. However, TYC, Poteet explained, dismissed the grievance "on July 13, 2007,
pursuant to the agency's grievance policy . . . because under the agency's grievance policy in effect
at the time of Dr. Brantley's discharge . . . a decision to terminate employment made by the agency's
executive director is not subject to the full grievance process."

 Finally, in addition to his testimony regarding Brantley, Poteet further averred that
Castillo had been continuously employed by TYC since 1994, "remains a TYC employee in good
standing," and that the agency "has not recommended that [her] employment be terminated, nor is
she under a threat of termination."


Plaintiffs' response

 Plaintiffs filed a response in which they joined issue with both the TYC Defendants'
"plea to the jurisdiction" and "summary judgment" grounds. In support, they attached evidence that
included affidavits from each Plaintiff. (15) Material to our analysis, Alvarez-Sanders testified that,
consistent with her pleading allegations, Pope had given her the choice of either resigning or being
fired, gave her "15 minutes to make my decision," and that she had opted to resign out of fear
of being "thrashed and humiliated in the press by the TYC and its officials." Alvarez-Sanders added
that when she inquired as to the reason why Pope had taken this action, Pope "abruptly informed
me that if I chose to not resign, the reasons would be presented at my termination hearing." 
Plaintiffs also attached affidavits from a former TYC general counsel, Neil Nichols, and a former
TYC human resources manager, Karen Giles, who purported to opine that the agency had not
followed its procedures for involuntary termination of for-cause employees in connection with its
"termination" of Alvarez-Sanders and Logterman. Furthermore, Alvarez-Sanders and Logterman
averred that under TYC's personnel policies, the agency's coding of their personnel files to
reflect that they resigned in lieu of termination and were ineligible for rehire implied that they had
committed misconduct.

 Also of relevance, Brantley averred that, generally consistent with the
TYC Defendants' evidence, the agency had taken the position that he was not entitled to the
grievance process and evidentiary hearing because, as of the date of his termination, the agency's
grievance policies had been changed to make Owens's decision final. As for Castillo, she averred
that, consistent with her pleading allegations, "since the effective date of Senate Bill 103, the TYC
has classified me as an at-will employee" and "informed me that I no longer am a for cause employee
as it relates to my employment with the TYC and the State of Texas." However, Castillo did not
controvert Poteet's testimony that she had remained an employee in good standing and faced no
threat of termination. 


Ruling

 A hearing was held at which no further evidence was presented. The record reflects
that the parties and the district court addressed only the grounds designated within the "plea to
the jurisdiction" portion of the TYC Defendants' filing and did not reach those raised within the
"motion for summary judgment." Following the hearing, the district court partially granted the plea
and dismissed all of the claims asserted by Brantley and Castillo, as well as Alvarez-Sanders's and
Logterman's "claims for defamation, constitutional takings, and declaratory judgment." The court
did not elaborate as to the specific grounds on which it relied.

 The district court's rulings left pending only Alvarez-Sanders's and Logterman's
"claim for wrongful discharge." The court granted the plea and dismissed this "claim" "to the extent
they seek to recover money damages" but denied it "to the extent they seek to recover equitable
relief" under that theory. The court afforded Alvarez-Sanders and Logterman the opportunity
"to replead their wrongful discharge claim to assert a claim for equitable relief against a proper
state official, in his/her official capacity" within fifteen days thereafter. The district court did not,
however, purport to immediately dismiss Alvarez-Sanders and Logterman's "claim for wrongful
discharge to the extent they seek to recover equitable relief" from TYC, although compliance with
the court's order would result in Plaintiffs non-suiting the agency by omission.

 Both Plaintiffs and the TYC Defendants filed notices of appeal from the
district court's order. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008); see also
id. § 51.014(b) (West 2008) (automatic stay of trial court proceeding upon filing of notice of appeal
under subsection (a)(8)). 


ANALYSIS

 Plaintiffs bring nine issues on appeal, while the TYC Defendants bring two. (16) The
issues are most productively explained and analyzed according to the particular Plaintiff or Plaintiffs
to whom they pertain.

Castillo

 Castillo, the sole Plaintiff currently employed at TYC, seeks only declaratory
and injunctive relief predicated on a challenge to section 37's constitutionality. In their third issue,
Plaintiffs urge that the district court erred in dismissing Castillo's claims for lack of ripeness.

 Ripeness is in part an aspect of the justiciable controversy that is required
before the judicial branch is constitutionally empowered to resolve a dispute. See Patterson
v. Planned Parenthood, 971 S.W.2d 439, 442-43 (Tex. 1998) (observing that ripeness and other
justiciability doctrines derive in part from separation-of-powers principles and the constitutional
prohibition against advisory opinions). "To constitute a justiciable controversy, there must exist
a real and substantial controversy involving genuine conflict of tangible interests and not merely
a theoretical dispute." Bonham State Bank v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995) (quoting
Bexar-Medina-Atascosa Counties Water Control & Improvement Dist. No. 1 v. Medina Lake Prot.
Ass'n, 640 S.W.2d 778, 779-80 (Tex. App.--San Antonio 1982, writ ref'd n.r.e.)). Ripeness is
"peculiarly a question of timing"--specifically, whether the facts have developed sufficiently that
a plaintiff has incurred or is likely to incur a concrete injury. Perry v. Del Rio, 66 S.W.3d 239, 249-51 (Tex. 2001) (quoting Regional Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974)).
Ripeness is thus said to be lacking where the case involves "uncertain or contingent future events
that may not occur as anticipated, or indeed may not occur at all." Patterson, 971 S.W.2d at 442
(quoting 13A Charles A. Wright et al., Federal Practice & Procedure § 3532, at 112 (2d ed. 1984)). 

 As the basis for her claimed justiciable interest in obtaining declaratory and injunctive
relief regarding section 37, Castillo pled that the agency "currently considers [her] to be an at
will employee, despite the fact that she was employed by the TYC before the effective date of
Senate Bill 103." Similarly, as evidence of her justiciable interest, Castillo averred that "since the
effective date of Senate Bill 103, the TYC has classified me as an at will employee" and that agency
officials had advised her that they no longer considered her a for-cause employee. However, Castillo
has neither alleged nor presented evidence that section 37 has had or is threatening to have any
tangible impact on her. In fact, the TYC Defendants presented unconverted evidence negating
that fact. See Miranda, 133 S.W.3d at 227. Namely, Poteet testified that Castillo "remains a
TYC employee in good standing" and that the agency "has not recommended that [her] employment
be terminated, nor is she under a threat of termination."

 In urging that she nonetheless possesses a ripe, justiciable interest in her claims,
Castillo emphasizes that one's status as a for-cause public employee is considered to create a
property right in continued employment that is protected by procedural due process requirements.
See, e.g., Loudermill, 470 U.S. at 538-39. Consequently, Castillo reasons, she incurred an immediate
concrete injury at the moment section 37 took effect and "divested" her of that property right. As
Castillo explains her view on appeal, "where once [she] was clothed in the protection of a vested
right and due process before termination, she has been stripped of her protection and stands naked
before TYC without the rights she previously enjoyed." (Emphasis in original.) But this is merely
a restatement of the fact that Castillo comes within the class of individuals whose terms of
employment were altered by section 37--and that fact alone does not establish that she presently has
a ripe, justiciable interest in challenging that enactment. A justiciable interest in regard to a statute
requires more, "some actual or threatened restriction under that statute." Texas Workers' Comp.
Comm'n v. Garcia, 893 S.W.2d 504, 517-18 (Tex. 1995) (discussing the related concept of
standing). And whether section 37 will ever have anything more than merely a theoretical effect on
Castillo turns on at least two sets of contingencies: (1) whether her termination will ever occur or
be threatened, and (2) TYC's specific actions in that event. Consequently, Castillo's asserted interest
in the declaratory and injunctive relief rests upon the sorts of "uncertain or contingent future events
that may not occur as anticipated, or indeed may not occur at all" that characterize unripe claims.
Patterson, 971 S.W.3d at 442; see also Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 162 (1967)
(holding that claims were not ripe where new regulations might never affect plaintiffs and where
the impact of the regulation was not "felt immediately by those subject to it in conducting their
day-to-day affairs"); Garcia, 893 S.W.2d at 33-34 (plaintiff lacked standing to assert constitutional
challenge to new workers' compensation act where he "has submitted no claim for benefits under
the Act, may never do so," and, if he ever did, "there is no way to predict what action the
Commission may take on that claim"). Because the unconverted jurisdictional evidence negates the
ripeness of Castillo's claims, the district court properly dismissed them for want of subject-matter
jurisdiction. We overrule Plaintiffs' third issue.


Alvarez-Sanders and Logterman

 "Wrongful termination"/due process

 Alvarez-Sanders and Logterman asserted theories of "wrongful termination"
predicated on allegations that they were deprived of their procedural due process rights in their
employment by being constructively discharged. While dismissing their claims under this theory
to the extent they sought money damages, the district court denied the plea to the jurisdiction to the
extent of permitting Alvarez-Sanders and Logterman to replead, if possible, a viable claim for
equitable relief against a state official. In their first issue on appeal, the TYC Defendants urge
that this ruling was error because the record demonstrates an incurable jurisdictional defect
such that repleading would be futile. See Texas A&M Univ. Sys. v. Koseoglu, 233 S.W.3d 835,
846 (Tex. 2007) (remanding to the trial court to dismiss claims with prejudice where pleadings
were incurably defective). Specifically, the TYC Defendants contend that Plaintiffs' pleadings and
the jurisdictional evidence negate an essential element of a viable due-process claim predicated
on constructive discharge, that the employer forced the employees' resignations with the intent
to deprive them of the procedural due process that would accompany involuntary termination.
See Fowler v. Carrollton Pub. Library, 799 F.2d 976, 981 (5th Cir. 1986); see University of Tex.
Med. Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995) (holding that although
Texas Constitution refers to "due course" rather than the U.S. Constitution's "due process," the
phrases are not meaningfully distinct and federal interpretations of procedural due process are
persuasive authority when interpreting Texas's "due course" guarantee).

 As a threshold matter, we question whether we have jurisdiction to consider this
ground for dismissal in the context of this interlocutory appeal where, as here, there is no indication
in the record that the TYC Defendants ever raised it before the district court. See Austin Indep. Sch.
Dist. v. Lowery, 212 S.W.3d 827, 834 (Tex. App.--Austin 2006, pet. denied) (we consider plea that
was filed and do not address whether the district court erred in denying the plea on a ground that
was not argued below); but see Texas State Bd. of Pub. Accountancy v. Bass, No. 03-09-00251-CV,
2011 Tex. App. LEXIS 294, at *14-15 n.2 (Tex. App.--Austin Jan. 14, 2011, no pet.) (noting
apparent exception where plaintiff purported to assert an ultra vires claim directly against a
state agency); Rusk State Hosp. v. Black, No. 12-09-00206-CV, 2010 Tex. App. LEXIS 4687, at *12
(Tex. App.--Tyler June 23, 2010, pet. granted) (declining to consider on interlocutory appeal
jurisdictional challenges not presented to or ruled on by the trial court). In any event, we would not
sustain the TYC Defendants' issue because we find no error in the district court's ruling as to these
claims. We agree with the TYC Defendants that Alvarez-Sanders and Logterman failed to allege
or present evidence that the TYC Defendants constructively discharged them with the intent
to deprive them of procedural due process. However, we disagree that the pleadings and evidence
affirmatively negate that element, as opposed to merely omitting it. Although Alvarez-Sanders and
Logterman did not assert that the TYC Defendants intended to deprive them of due process,
Plaintiffs asserted that they were given a choice to quit or be fired under "high-pressure"
circumstances, and that when they asked why, "Pope replied that Plaintiffs would be told if and when
they chose to be terminated." They further asserted that their requests to withdraw their resignations
were denied, and they were not permitted to file grievances. Rather than demonstrating an incurable
defect, the record reflects that Alvarez-Sanders and Logterman purported to assert a claim predicated
on due-process violations through constructive discharge, but failed to include sufficient facts
or allegations to support an element of that claim. Where, as here, the record fails to affirmatively
demonstrate incurable defects in jurisdiction, the appropriate remedy is to grant leave to amend
rather than to dismiss. See Miranda, 133 S.W.3d at 226-27.

 The TYC Defendants further object that allowing Alvarez-Sanders and Logterman
to replead to seek equitable relief under their wrongful-termination/due-process theory is futile
because they cannot seek reinstatement and would still lack standing to challenge section 37 in any
event. Although we ultimately agree that Alvarez-Sanders and Logterman's claims for equitable
relief do not create a justiciable interest on their part in the constitutional challenges, as we explain
below, that conclusion alone does not render futile their opportunity to replead claims for equitable
relief based on their wrongful-termination/due-process theory. As the TYC Defendants emphasize,
these claims of Alvarez-Sanders and Logterman are based on facts that occurred months before
section 37 took effect. Furthermore, they could conceivably seek equitable remedies other than
reinstatement. See Than, 901 S.W.2d at 933 ("In general, . . . the remedy for a denial of due process
is due process.").

 In short, the district court did not err in denying the TYC Defendants' plea to
the jurisdiction to the extent of permitting Alvarez-Sanders and Logterman the opportunity to
replead their wrongful-termination/due-process claims to seek equitable relief from an appropriate
state official (i.e., TYC's executive director). Having so held, however, the district court erred in
failing to dismiss Alvarez-Sanders and Logterman's wrongful-termination/due-process claims to the
extent they sought equitable relief from TYC itself. As the Texas Supreme Court has recently made
clear, a suit for equitable relief to restrain official conduct that is ultra vires of an agency's statutory
or constitutional powers must be asserted against a state official, in his or her official capacity,
and sovereign immunity bars such a claim if asserted against the agency itself. City of El Paso
v. Heinrich, 284 S.W.3d 366, 372-73 (Tex. 2009) (explaining that suits seeking to restrain illegal
acts of state officials "cannot be brought against the state, which retains immunity, but must be
brought against the state actors in their official capacity" because "'acts of officials which are not
lawfully authorized are not acts of the State'" (citation omitted)); see Creedmoor-Maha, 307 S.W.3d
at 513, 516 n.8 (recognizing that a suit to restrain a state official's unconstitutional conduct is a
type of ultra vires suit). Accordingly, we will reverse this portion of the district court's judgment
and render judgment dismissing the wrongful-termination/due-process claims of Alvarez-Sanders
and Logterman to the extent they are asserted against TYC. See Bass, 2011 Tex. App. LEXIS 294,
at *14-15 n.2 (noting that Texas Supreme Court has apparently concluded that this ground for
dismissal can be raised on appeal even in the context of a section 51.014(a)(8) interlocutory appeal). 


 "Defamation"

 In their fifth issue, Plaintiffs urge that the district court erred in dismissing the
defamation claims of Alvarez-Sanders and Logterman. (17) Plaintiffs do not appear to dispute that
sovereign immunity would bar a common-law tort claim for defamation, particularly one seeking
money damages. (18) Seemingly recognizing this, Plaintiffs have attempted to recast the defamation
claims they plead as instead seeking equitable relief to remedy constitutional violations. Before the
district court, Plaintiffs attempted to recast these claims as seeking injunctive or declaratory relief
to remedy "a lifelong scarlet letter/stigma" that amounted to a bill of attainder. On appeal, Plaintiffs
have shifted focus to suggest that "[d]efamation may be likened to a claim against an employer for
an unconstitutional deprivation of a liberty interest," and cite cases recognizing that due process may
be violated by a public employer's discharge of an employee under "stigmatizing" circumstances
without giving the employee the opportunity to clear his or her name. See Arrington v. County of
Dallas, 970 F.2d 1441, 1447 (5th Cir. 1992) ("A public employer may unconstitutionally deprive
its employee of a liberty interest if it discharges him under stigmatizing circumstances without giving
the employee an opportunity to clear his name."). We cannot conclude that the district court erred
in dismissing these claims.

 As a threshold matter, any claim for equitable relief from a constitutional violation
would, again, be barred by sovereign immunity to the extent that Plaintiffs would purport to assert
it against TYC. See Heinrich, 284 S.W.3d at 372-73. If any such claim were viable, it would lie
instead against TYC's executive director. See id. And, as demonstrated by our detailed review
of Plaintiffs' pleadings, and however liberally we might construe those pleadings, Plaintiffs did
not plead any claim for equitable relief predicated on defamation or some related notion
of stigmatization, much less one predicated on due process, the theory on which Plaintiffs
apparently now rely. In this regard, we observe that, "[t]o assert a claim for the deprivation of this
constitutional right to a name-clearing hearing, a plaintiff must allege that he was a public employee,
that he was discharged, that stigmatizing charges were made against him in connection with his
discharge, that the charges were false, that the charges were made public, that he requested a
name-clearing hearing, and that the hearing was denied." Id. at 1447 (citing Rosenstein v. City of
Dallas, 876 F.2d 392, 395-96 (5th Cir. 1989). Furthermore, as Plaintiffs recognize, the public
charges must be so stigmatizing that they create a "badge of infamy" that destroys the employee's
ability to obtain other employment. Evans v. City of Dallas, 861 F.2d 846, 851 (5th Cir. 1988). 
Additionally, injury to a plaintiff's reputation does not, in itself, amount to a deprivation of
this liberty interest. See Siegert v. Gilley, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is
a tort actionable under the laws of most States, but not a constitutional deprivation."). The live
pleadings fall far short of alleging the facts required to assert a viable due-process claim based on
stigmatization. Nor can we find any indication in the record that Plaintiffs advanced such a
theory, or sought leave to replead it, before the district court. (20) In short, we find no error in the
district court's dismissal of Plaintiffs' defamation claims, and overrule their fifth issue.


 "Takings"

 In their sixth issue, Plaintiffs urge that the district court erred in dismissing any of
their claims predicated on the alleged "taking" of their property rights in continued employment. (21)
However, as the TYC Defendants have pointed out, none of the Plaintiffs have asserted, or could
assert, a viable takings claim predicated on the "taking" of a public employee's property right
in continued employment. See Bates v. Texas State Technical Coll., 983 S.W.2d 821, 826 n.8
(Tex. App.--Waco 1998, pet. denied) (rejecting takings claim by employee whose teaching contract
was not renewed and stating that the court could "find no cases that hold that 'property' applies to
an individual's property interest in continued employment."); see also Seals v. City of Dallas,
249 S.W.3d 750, 759 (Tex. App.--Dallas 2008, no pet.) (relying on Bates for the proposition that
courts have refused to interpret the takings clause to protect an employee's interest in public
employment); De Mino v. Sheridan, 176 S.W.3d 359, 368-69 (Tex. App.--Houston [1st Dist.] 2004,
no pet.) (relying on Bates to conclude that non-renewal of teaching contract could not give rise to
takings claim; stating that "[plaintiff] directs us to no authority supporting his contention that his
personal interest in employment at UH or elsewhere constitutes a 'property' right for purposes
of the 'takings' clause"). Among other problems, the State cannot, as a matter of law, "take" a
public employee's property right in continued employment "for public use" in the manner
contemplated by the takings clause. See Steele v. City of Houston, 603 S.W.2d 786, 789 (Tex. 1980)
("The Constitution limits compensation to damages 'for or applied to public use,' and judicial
restraints have narrowed that phrase to damages which arise out of or as an incident to some kind of
public works."). Because these jurisdictional defects are incurable, the district court did not err in
dismissing the takings claims. See Miranda, 133 S.W.3d at 227. We overrule Plaintiffs' sixth issue.

 

 UDJA

 Alvarez-Sanders and Logterman assert two sets of claims for declaratory relief
under the UDJA. First, they seek declarations that they had the status of for-cause employees
in April 2007, as of the time of their alleged constructive discharges. The district court properly
dismissed these claims because the requested declarations overlap elements of their wrongful-termination/due-process claims and "[a]n action for declaratory judgment will not be entertained if
there is pending, at the time it is filed, another action or proceeding between the same parties and
in which may be adjudicated the issues involved in the declaratory judgment action." Texas Liquor
Control Bd. v. Canyon Creek Land Corp., 456 S.W.2d 891, 895 (Tex. 1970); see BHP Petroleum
Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990) ("The Declaratory Judgments Act is 'not available
to settle disputes already pending before a court.'" (citations omitted)). Although Plaintiffs appear
to question this rule in their seventh and eighth issues, those contentions are without merit, and we
overrule them. 

 Second, Plaintiffs urge in their fourth issue that even though Alvarez-Sanders
and Logterman were no longer TYC employees at the time section 37 took effect, their claims for
equitable relief give rise to standing on their part to obtain declaratory and injunctive relief
challenging that statute. Consequently, they reason, the district court erred in dismissing these
claims. These arguments fail for reasons similar to their arguments regarding Castillo's claims. 

 As of the date section 37 took effect, Alvarez-Sanders and Logterman were no longer
employees of TYC, and had not been for approximately two months. At that juncture, it was thus
impossible for them to suffer the required "actual or threatened restriction under that statute"
necessary for standing. Garcia, 893 S.W.2d at 517-18. That condition would continue to exist
unless and until they could, in light of the foregoing holdings, (1) plead a viable claim for equitable
relief based on wrongful termination, (2) prevail, and (3) the equitable relief they ultimately obtained
would include reinstatement, such that section 37 would apply to them. These contingencies, to say
the least, are far too remote and speculative at the present time to give rise to a justiciable interest
on the part of Alvarez-Sanders and Logterman. Patterson, 971 S.W.2d at 442 (claim is unripe
where the case involves "uncertain or contingent future events that may not occur as anticipated, or
indeed may not occur at all"); see also Perry, 66 S.W.3d at 249-51 (even in instances where claim
might eventually ripen based on subsequent events, trial court must dismiss claim if, at time of
adjudication, it is not ripe). We overrule Plaintiffs' fourth issue. 

Brantley

 Unlike the other Plaintiffs, Brantley was (1) formally terminated and (2) this event
occurred after section 37 took effect. Like Alvarez-Sanders and Logterman, Brantley asserted
"defamation" and "takings" claims and Plaintiffs challenge the dismissal of those claims on the same
grounds they assert regarding the other two former employee Plaintiffs. We have already disposed
of these contentions above.

 Brantley also asserted a theory of wrongful termination predicated on the allegations
that TYC discharged him without "due process," that is, without affording him the procedural
protections to which for-cause TYC employees had been entitled. Additionally, like the other
three Plaintiffs, Brantley asserted claims for declaratory and injunctive relief challenging section 37's
constitutionality. The TYC Defendants attacked the district court's jurisdiction over these claims
in part on the basis that the uncontroverted jurisdictional evidence establishes that Brantley
was terminated only after receiving the same process that a for-cause employee would have received,
rendering his claims moot. Consequently, they reasoned, there was no justiciable controversy
regarding Brantley's claims. In his first issue, Brantley asserts that the district court erred in
dismissing his claims for declaratory and injunctive relief challenging section 37's constitutionality.
In his second issue, Brantley contends in the alternative that the district court erred in dismissing his
wrongful-termination claim and that he should have been permitted to replead that claim to seek
equitable relief, in the same manner that Alvarez-Sanders and Logterman were. We agree in part.

 Although the jurisdictional evidence established that Brantley received pre-termination notice and an opportunity to respond consistent with TYC's former policies governing
involuntary terminations, it remains that Brantley did not receive all of the process to which
he claims due process would have entitled him as a for-cause employee. Namely, Brantley was
denied an evidentiary hearing on the grounds for his termination. The TYC Defendants tacitly
acknowledge this fact in emphasizing that Brantley was not entitled to an evidentiary hearing under
the grievance procedures in effect after the agency amended them effective June 20, 2007 to
eliminate the right to an evidentiary hearing where, as here, the executive director terminates the
employee. Consequently, whatever interest Brantley possessed in obtaining the judicial relief he
sought was not entirely extinguished by the process he received. The district court, therefore, would
have erred in dismissing Brantley's claims based on a conclusion that they were moot.

 On appeal, the TYC Defendants, in a supplemental brief, suggest that Brantley's
claims should nonetheless be dismissed because he did not, as a matter of law, allege facts
that constitute a constitutional violation. See Creedmoor-Maha, 307 S.W.3d at 513, 516 n.8. The
TYC Defendants essentially reurge their arguments--styled as "summary judgment" grounds in
the district court--that the ex post facto law prohibition applies only to penal statutes, see Rogers,
532 U.S. at 456; Barshop, 925 S.W.2d at 633-34, and that Plaintiffs possessed no vested
property right in the Legislature's continuing to grant them for-cause employment status, only a
mere expectancy based on the anticipated continuation of current law. See, e.g., McMurtray, 11 F.3d
at 504. The mere fact that the TYC Defendants labeled this jurisdictional challenge as a "summary-judgment" ground, as opposed to a ground in their plea to the jurisdiction, is not in itself dispositive
of the TYC Defendants' contention. See Austin State Hosp. v. Graham, No. 10-0674, 2011 Tex.
LEXIS 611at *4-6 (Tex. Aug. 26, 2011) (explaining that an interlocutory appeal may be taken from a
refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to
the jurisdiction or some other procedural vehicle). But, as Plaintiffs emphasize, the district court
did not reach this ground for dismissal, however labeled. Under the precedents of this Court, as
previously noted, we do not have jurisdiction in the context of this interlocutory appeal to reach
this ground for dismissal, whatever its merits. Lowery, 212 S.W.3d at 834 ("we . . . do not address
whether the district court erred in denying the plea on a ground that was not argued below.").

 Like Alvarez-Sanders and Logterman, Brantley should be permitted to replead his
wrongful-termination/due-process claim to seek equitable relief against a proper state official. To
this extent, the district court erred in dismissing Brantley's wrongful-termination/due-process claim.
However, the district court properly dismissed this claim to the extent he seeks monetary relief
or seeks any relief from TYC. Heinrich, 284 S.W.3d at 372-74. Likewise, because Brantley's
constitutional challenges under the UDJA seek declarations regarding issues that are already
elements of his wrongful-termination/due-process claim, the district court did not err in dismissing
his UDJA claims. See Texas Liquor Control Bd., 456 S.W.2d at 895.


CONCLUSION

 We affirm the district court's order except in two respects. First, we reverse the
district court's order to the extent it fails to dismiss the wrongful-termination/due-process claims
of Alvarez-Sanders and Logterman against TYC. We render judgment dismissing those claims
for want of subject-matter jurisdiction. Second, we reverse the district court's order dismissing
Brantley's wrongful-termination/due-process claim to the extent it would seek equitable relief
against an appropriate state official. We render judgment that Brantley is to replead said claim
against a proper state official within fifteen days of the date of this Court's judgment.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Henson;

 Justice Patterson not participating


Affirmed in part; Reversed and Rendered in part

Filed: October 12, 2011

1. Act of May 25, 2007, 80th Leg., R.S., ch. 263, §§ 1-78, 2007 Tex. Gen. Laws 421, 421-57
(current version at Tex. Hum. Res. Code Ann. §§ 61.001-.130 (West 2001 & Supp. 2010)); see
Senate Research Center, Bill Analysis, Tex. S.B. 103, 80th Leg., R.S. (2007) (discussing background
of the amendments). 
2. Act of May 25, 2007, 80th Leg., R.S., ch. 263, § 37, 2007 Tex. Gen. Laws 421, 439
(current version at Tex. Hum. Res. Code Ann. § 61.035(b)). 
3. Act of May 25, 2007, 80th Leg., R.S., ch. 263, § 37, 2007 Tex. Gen. Laws 421, 439
(current version at Tex. Hum. Res. Code Ann. § 61.035(b)). 
4. Id.
5. Act of May 25, 2007, 80th Leg., R.S., ch. 263, § 78, 2007 Tex. Gen. Laws 421, 457. 
6. Plaintiffs' live pleading was their first amended petition. The TYC Defendants have
attached to their appellate briefing what purports to be a copy of a second amended petition
that Plaintiffs filed after the district court's ruling. The TYC Defendants cite this pleading to support
arguments that Plaintiffs cannot cure, via repleading, the jurisdictional defects that were identified
in the district court's order. Strictly speaking, however, this pleading is not part of the record in this
case, nor was it before the district court at the time of the ruling on appeal.
7. Castillo also purports to sue on behalf of a putative class of current TYC employees. The
record does not reflect that a class-certification motion has either been filed or ruled upon below.
8. See U.S. Const. art. I, § 9, cl. 2 ("No Bill of Attainder or ex post facto Law shall be
passed."); U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or
property, without due process of law"); Tex. Const. art. I, §§ 16 ("No bill of attainder, ex post facto
law, retroactive law, or any law impairing the obligation of contracts, shall be made."), 19
("No citizen of this State shall be deprived of . . . property, privileges or immunities . . . except by
the due course of the law of the land.").
9. In addition to naming the TYC and its current executive director, in her official capacity,
as defendants, Plaintiffs also sued Owens and Pope individually. Additionally, Plaintiffs purported
to sue Owens and Pope in their official capacities even though neither is currently employed by the
agency. Because none of the individual defendants are (or can be) parties to this appeal, and because
any formal distinctions between the TYC Defendants and the former officers in their official
capacities are not material to our analysis (the agency-versus-officers-in-official-capacity distinction
becomes relevant chiefly to prospective relief that would lie against the current executive director,
see City of El Paso v. Heinrich, 284 S.W.3d 366, 372-73 (Tex. 2009) (explaining that suits seeking
to restrain ultra vires acts of state officials "must be brought against the state actors in their official
capacity")), we identify the defendants simply as the "TYC Defendants" for clarity and convenience. 
We have similarly corrected our caption, which originally bore, in error, the names of additional
parties before the district court.
10. See Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008).
11. See id. § 37.009 (West 2008).
12. The individual defendants also joined in the motion for summary judgment. Because only
the grounds asserted by the TYC Defendants are pertinent to this appeal, we discuss only those. 
13. The TYC Defendants also attached documents reflecting an abortive attempt by
Logterman and Alvarez-Sanders to litigate in federal court some of the same claims that Plaintiffs
assert in this proceeding.
14. Pope specifically cited Brantley's failure to act on "some serious incident reviews
regarding the superintendent at a facility having reportedly sprayed water onto two youths who
had climbed a tree" and "complaints about a practice by which youth were kept at parade rest" for
55-minute intervals.
15. The affidavits contain numerous unsupported legal conclusions to the effect that the
Plaintiffs' for-cause status constitutes a "vested property right." See City of San Antonio v. Pollock,
284 S.W.3d 809, 816 (Tex. 2009) (observing that unsupported legal conclusions are not competent
evidence and may not support a judgment even in the absence of an objection).
16. Several of the arguments asserted in the TYC Defendants' briefing in support of their
cross-appeal are in substance responses to Plaintiffs' appellate arguments rather than grounds for
altering the judgment in their favor or cross-points asserting alternative grounds for affirming the
district court's judgment. We have analyzed them accordingly.
17. Within this issue, Plaintiffs also advance the same arguments with respect to the dismissal
of Brantley's defamation claims.
18. (19)
19. § 
 
  -- 
 
20. We further observe that the second amended petition that is attached to the TYC
Defendants' briefing does not purport to assert such a theory.
21. As with their fifth issue, within their sixth issue Plaintiffs advance the same arguments
with respect to the district court's dismissal of Brantley's takings claim.