ACCEPTED
15-25-00064-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/17/2025 4:19 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00064-CV**

# In the Court of Appeals
# for the Fifteenth Judicial District

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/17/2025 4:19:13 PM
CHRISTOPHER A. PRINE
Clerk

TEXAS STATE BOARD OF SOCIAL WORKER EXAMINERS, ET AL.,

*Appellants*,

*v.*

KATHERIN YOUNIACUTT AND TAMMY THOMPSON,

*Appellees.*

On Appeal from the
345th Judicial District Court, Travis County

## REPLY BRIEF FOR APPELLANTS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

BETH KLUSMANN
Assistant Solicitor General
State Bar No. 24036918
Beth.Kusmann@oag.texas.gov

Counsel for Appellants

# TABLE OF CONTENTS

Page

Index of Authorities ...................................................................................i

Introduction ............................................................................................ 1

Argument ................................................................................................ 2

    I.   Plaintiffs Misunderstand Their Jurisdictional Burden. ........................... 2

    II.  Plaintiffs' Substantive Due-Course Claim Is Facially Invalid. ................... 6

        A.  Plaintiffs have not established a protected liberty interest in becoming licensed health care workers. ............................................... 6

        B.  Section 108.052 satisfies all relevant constitutional tests. .................. 12

    III. The Enactment of Section 108.052 Did Not Deprive Plaintiffs of Procedural Due Course. ...........................................................................17

    IV. Section 108.052 Does Not Violate the Texas Constitution's Guarantee of Equal Rights. .................................................................... 21

Prayer .................................................................................................... 25

Certificate of Compliance ....................................................................... 25

# INDEX OF AUTHORITIES

Page(s)

**Cases:**

*Abbott v. Mex. Am. Legis. Caucus, Tex. House of Representatives*,
    647 S.W.3d 681 (Tex. 2022) ....................................................2, 3, 5

*Andrade v. NAACP of Austin*,
    345 S.W.3d (Tex. 2011)............................................................... 4

*Barletta v. Rilling*,
    973 F. Supp. 2d 132 (D. Conn. 2013) .....................................16, 24

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
    239 U.S. 441 (1915) .....................................................................17

*Chunn v. State, ex rel. Miss. Dep't of Ins.*,
    156 So. 3d 884 (Miss. 2015) ........................................................16

*City of Austin v. Powell*,
   704 S.W.3d 437 (Tex. 2024) ........................................................... 2, 3

*City of El Paso v. Heinrich*,
   284 S.W.3d 366 (Tex. 2009) ................................................................ 5

*Cooper Indus. v. Aviall Servs.*,
   543 U.S. 157 (2004) ............................................................................. 8

*Cronin v. O'Leary*,
   No. 00-1713-F, 2001 WL 919969,
   (Mass. Super. Ct. Aug. 9, 2001) ...................................................... 20

*Dent v. State of W.Va.*,
   129 U.S. 114 (1889) ............................................................................. 9

*Dobbs v. Jackson Women's Health Org.*,
   597 U.S. 215 (2022) ...................................................................... 12, 14

*Edionwe v. Bailey*,
   860 F.3d 287 (5th Cir. 2017) ............................................................ 19

*Fields v. Dep't of Early Learning*,
   434 P.3d 999 (Wash. 2019) ............................................................... 20

*Furst v. NYC Transit Auth.*,
   631 F. Supp. 1331 (E.D.N.Y. 1986) ................................................. 16

*Gregg v. Lawson*,
   732 F. Supp. 849 (E.D. Tenn. 1989) ........................................... 20, 24

*Haveman v. Bureau of Pro. & Occupational Affs.*,
   238 A.3d 567 (Pa. Commw. Ct. 2020) ......................................... 16, 23

*Honors Acad., Inc. v. TEA*,
   555 S.W.3d 54 (Tex. 2018) .................................................................. 4

*Klumb v. Houston Mun. Emps. Pension Sys.*,
   458 S.W.3d 1 (Tex. 2015) ................................................... 2, 3, 21, 23

*Matzen v. McLane*,
   659 S.W.3d 381 (Tex. 2021) .......................................... 17, 18, 19, 20

*McDonald v. Bd. of Election Comm'rs*,
   394 U.S. 802 (1969) ........................................................................... 23

*McFadden v. Longham*,
   58 Tex. 579 (1883) ........................................................................ 20-21

ii

*McMurtray v. Holladay*,
11 F.3d 499 (5th Cir. 1993) ............................................................19

*Miller v. Carter*,
547 F.2d 1314 (7th Cir. 1977) .......................................................16

*Nixon v. Pennsylvania*,
839 A.2d 277 (Penn. 2003) ............................................................16

*Owens Corning v. Carter*,
997 S.W.2d 560 (Tex. 1999) ......................................................... 21

*Patel v. Tex. Dep't of Licensing & Regul.*,
469 S.W.3d 69 (Tex. 2015) ..............................1, 2, 4, 5, 6, 7, 8, 11, 12, 13, 14, 15

*Perrine v. Mun. Ct.*,
488 P.2d 648 (Cal. 1971) ...............................................................16

*Rattray v. City of Brownsville*,
662 S.W.3d 860 (Tex. 2023) ......................................................... 5

*Shimose v. Haw. Health Sys. Corp.*,
345 P.3d 145 (Haw. 2015) .............................................................16

*Smith v. Decker*,
312 S.W.2d 632 (Tex. 1958) ......................................................... 8

*St. Joseph Abbey v. Castille*,
712 F.3d 215 (5th Cir. 2013) .........................................................13

*State v. Loe*,
692 S.W.3d 215 (Tex. 2024) ......................................................... 8

*TABC v. Live Oak Brewing Co.*,
537 S.W.3d 647 (Tex. App.—Austin 2017, pet. denied) ...................................13

*Tarrant County v. Ashmore*,
635 S.W.2d 417 (Tex. 1982) ..........................................................19

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ......................................................... 3, 4

*Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*,
647 S.W.3d 648 (Tex. 2022) ..............................................7, 8, 10

*Tex. DFPS v. Grassroots Leadership, Inc.*,
717 S.W.3d 854 (Tex. 2025) ..........................................................20

*Tex. Workers' Comp. Comm'n v. Garcia*,
   893 S.W.2d 504 (Tex. 1995) ........................................................ 14

*Tex. S. Univ. v. Villarreal*,
   620 S.W.3d 899 (Tex. 2021) .......................................................... 4

*Town of Shady Shores v. Swanson*,
   590 S.W.3d 544 (Tex. 2019) .......................................................... 2

*United States v. LULAC*,
   793 F.2d 636 (5th Cir. 1986) ........................................................17

*United States v. Rahimi*,
   602 U.S. 680 (2024) ......................................................................11

*Univ. of Tex. Med. Sch. v. Than*,
   834 S.W.2d 425 (Tex. 1992) .......................................................... 4

*Wilson v. Andrews*,
   10 S.W.3d 663 (Tex. 1999) ...........................................................15

**Constitutional Provisions, Statutes, and Rules:**

Penn. Const. art. I, § 1 ....................................................................16

Tex. Const.:
   art. I, § 3 ..................................................................................... 21
   art. I, § 19 ..................................................................................... 6
   art. II, § 1 ..................................................................................... 1
   art. VIII, § 2 ................................................................................. 9

Tex. Civ. Prac. & Rem. Code § 37.006(b) ...................................... 5

Tex. Code Crim. Proc. art. 56A.352(b-1) .................................... 23

Tex. Educ. Code § 37.115(d-1) ..................................................... 22

Tex. Fam. Code § 202.002(a) ........................................................ 22

Tex. Gov't Code § 311.034 ............................................................. 5

Tex. Occ. Code:
   § 108.052 ................................... 1, 6, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 23, 24
   § 502.002(6) ................................................................................ 22
   § 502.252 ..................................................................................... 22
   § 502.252(4) ................................................................................ 22
   § 503.003 ..................................................................................... 22

Tex. Occ. Code:
  § 503.302 ......................................................................................... 22
  § 503.302(2) ................................................................................... 22
  § 505.353 ......................................................................................... 22
  § 505.353(b) ................................................................................... 22
  § 505.0025 ....................................................................................... 22

22 Tex. Admin. Code § 882.3 ........................................................... 18

**Other Authorities:**

*A New Political Platform*, Galveston Daily News, June 11, 1874 .............................. 9

Act approved Apr. 3, 1879, 16th Leg., R.S., ch. 66,
   1879 Tex. Gen. Laws 71 .............................................................. 9

Act of June 1, 1981, 67th Leg., R.S., ch. 776,
   1981 Tex. Gen. Laws 2923 ........................................................... 11

*Address to the Freedmen of Texas*, Semi-Weekly State Gazette (Austin),
   Nov. 21, 1865. .......................................................................... 10

*Civil Liberty*, 1 Alexander M. Burrill,
   *A Law Dictionary and Glossary* (2d ed. 1871) ............................ 9

*Current Comment*, Evening Tribune (Galveston), Apr. 29, 1886 .......................... 10

Denison Daily Herald, Dec. 22, 1878 ............................................ 10

Fort Worth Standard, July 8, 1875 ................................................ 9

H.B. 4974, 89th Leg., R.S. (2025) ................................................ 24

House Comm. on Pub. Health, Bill Analysis,
   Tex. H.B. 1899, 86th Leg., R.S. (2019) ......................................... 13, 14

*Injustice of the Occupation Tax*, Denison Daily News, May 19, 1876 ...................... 9

*Lumber Inspection*, Galveston Daily News, Apr. 9, 1875 .............................. 10

Nat'l Ass'n of Soc. Workers, *Types of Social Work*,
   available at https://www.socialworkers.org/News/Facts/Types-
   of-Social-Work ......................................................................... 23

*The Occupation Tax*, Galveston Daily News, May 18, 1876 .............................. 9

Portal to Texas History, https://texashistory.unt.edu/ ............................ 9

*Railways*, Jacksboro Gazette, Jan. 17, 1889 ............................................ 10

Stephen Simpson, *A Look at the Texas Mental Health Workforce
   Shortage*, Tex. Trib. (July 17, 2024) ............................................ 24

Tex. Att'y Gen. Op. No. 3438 (To Seller of Brandy Fruits, Aug. 24,
1875), Tex. State Libr. & Archives Comm'n, Box 2006/216-1
(https://perma.cc/KZ2L-C8Z3) ........................................................................ 10

# Introduction

The Legislature decides how to best protect Texans, and disagreements with the Legislature's choices do not provide grounds for judicial intervention. Only constitutional violations allow a court to reject the Legislature's judgment. And here, the Legislature did not cross any constitutional lines when enacting Texas Occupations Code section 108.052 to bar potentially violent individuals from holding health care licenses. The Court should respect the Legislature's choice. *See* Tex. Const. art. II, § 1.

Plaintiffs liken this case to *Patel v. Texas Department of Licensing & Regulation*, 469 S.W.3d 69 (Tex. 2015). But threading eyebrows is not providing health care. And hundreds of irrelevant hours of training is a burden on anyone, while avoiding the commission of violent felonies is not a burden for most. When *Patel* is limited to what it actually held, and not the broad constitutional propositions Plaintiffs wish it included, Plaintiffs are left with very little to support their claims—claims that would constitutionalize all occupational-licensing regimes and allow courts to second-guess the Legislature's decisions.

Plaintiffs paint a picture of irrational, oppressive legislation that simply does not exist. Section 108.052 is rationally related to the legitimate state interest of protecting the health and safety of its most vulnerable citizens. It has no illegitimate purpose, nor is it oppressively burdensome. There may well be room to disagree with the Legislature's choice, but it was not an unconstitutional one. The Court should reverse the denial of the plea to the jurisdiction and render judgment dismissing Plaintiffs' claims.

# ARGUMENT

## I.  Plaintiffs Misunderstand Their Jurisdictional Burden.

Plaintiffs bear the burden of establishing jurisdiction over their suit. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). In the context of the UDJA, that means pleading a claim that is not "facially invalid." *Abbott v. Mex. Am. Legis. Caucus, Tex. House of Representatives* (*MALC*), 647 S.W.3d 681, 698 (Tex. 2022). Contrary to Plaintiffs' unsupported assertions (at 14, 16), this requires more than avoiding "obvious[]" or "glaring" errors. When the jurisdictional question is intertwined with the merits, the Court considers the merits to the extent necessary to determine whether a claim is facially invalid. *MALC*, 647 S.W.3d at 698; *Town of Shady Shores*, 590 S.W.3d at 550. And it uses a standard similar to that of summary judgment. *City of Austin v. Powell*, 704 S.W.3d 437, 446 (Tex. 2024). If a claim, as pleaded, will fail as a matter of law, it must be dismissed as barred by sovereign immunity. *See, e.g.*, *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 14 (Tex. 2015) (holding that sovereign immunity barred an equal-protection claim that "fail[ed] as a matter of law").

**A.**  The main point of contention between the parties is how closely the Court should look at Plaintiffs' claims to determine whether they are facially invalid. Plaintiffs quote the Texas Supreme Court's one-time use of the phrase "basic pleading defects" in *Patel*, 469 S.W.3d at 77, and then make the citation-free assertion that "basic pleading defects" refers only to "claims that are obviously defective on their face." Appellees' Br. 14; *see also id.* at 16 (referring to "glaring" errors). But pleading a facially invalid claim *is* a basic pleading defect.

2

The State is unaware of any legal standard that permits an *actually* invalid claim to move forward merely because it is not *obviously* or *glaringly* so. Rather, the Supreme Court has explained that "the process for resolving a plea to the jurisdiction asserting immunity from suit [is] one that 'generally mirrors that of a summary judgment.'" *Powell*, 704 S.W.3d at 446 (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). Summary judgment roots out legally invalid claims, not just those that have some obvious defect.

Plaintiffs' cherry-picked language (at 14) describes portions of opinions in which pleas to the jurisdiction have been granted based on facial invalidity. *E.g.*, *MALC*, 647 S.W.3d at 703; *Klumb*, 458 S.W.3d at 16-17. But precedent is read as a whole, rather than for isolated phrases. Doing so demonstrates that the facial-invalidity analysis goes far beyond the limitations Plaintiffs would impose—identifying "absurd" claims or those "conclusively negated" by existing precedent. Appellees' Br. 14. In *Klumb*, for example, the Supreme Court determined that an equal-protection claim failed as a matter of law because the classification was rationally related to a legitimate purpose. 458 S.W.3d at 13-14. It then also dismissed a due-course claim after concluding that prior precedent remained valid despite the plaintiffs' argument that a constitutional amendment required a different result. *Id.* at 14-17. Likewise, in *MALC*, the Court's actual analysis encompassed far more than a simple conclusion that the plaintiffs' interpretation of a constitutional provision would lead to an "absurd result." 647 S.W.3d at 701-03.

Other precedent from the Supreme Court reveals that due-course and equal-protection claims are routinely considered in-depth at the jurisdictional stage. The

3

Court in *Honors Academy, Inc. v. TEA* dismissed a due-course claim after concluding, as a matter of first impression, that charter schools do not have vested property rights in their charters. 555 S.W.3d 54, 60-68 (Tex. 2018). And in *Andrade v. NAACP of Austin*, the Court dismissed plaintiffs' equal-protection claim at the jurisdictional stage because it failed as a matter of law. 345 S.W.3d 1, 14 (Tex. 2011).

Plaintiffs' assertion that this case should be allowed to proceed because it is just like *Patel* and a number of out-of-state cases does not prevent the Court from determining, at the pleading stage, whether Plaintiffs are wrong. In *Texas Southern University v. Villarreal*, the plaintiff brought a due-course claim based on her academic dismissal from college, citing prior Supreme Court precedent recognizing such a claim for disciplinary dismissals. 620 S.W.3d 899, 904-05 (Tex. 2021) (citing *Univ. of Tex. Med. Sch. v. Than*, 834 S.W.2d 425, 429 (Tex. 1992)). Rather than allow the claim to move forward on the strength of *Than* and out-of-state precedent, the Supreme Court considered whether academic dismissals created the same stigma as disciplinary dismissals. *Id.* at 905-08. Concluding they did not, the Court found no protected liberty interest and dismissed the claim on jurisdictional grounds. *Id.* at 907-08, 910. At no point in any of these cases did the Supreme Court ask whether a claim was obviously or glaringly flawed.

Sometimes the facial invalidity of a claim is apparent, and other times it requires a more careful analysis. But a trial court "must determine at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed." *Miranda*, 133 S.W.3d at 226. While Plaintiffs are not required to prove that they will prevail on the merits, *Patel*, 469 S.W.3d at 77,

they must show that they will not inevitably lose. If Plaintiffs' claims, as pleaded, will fail, the Court lacks jurisdiction to move beyond the pleading stage. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 868 (Tex. 2023) ("Just one valid jurisdictional obstacle is enough for the court to halt further proceedings.").

**B.** Plaintiffs have also failed to establish jurisdiction over the individual defendants—the individual Board and Council members, as well as the executive director of the Council. The UDJA's waiver of sovereign immunity lacks the clarity of other waivers, but the Supreme Court has interpreted it to waive the immunity of "the relevant governmental entities." *MALC*, 647 S.W.3d at 697 n.7; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009); *see also* Tex. Civ. Prac. & Rem. Code § 37.006(b) (requiring "the municipality" to be joined when the validity of an ordinance is challenged). Plaintiffs cite no clear and unambiguous statutory language in the UDJA waiving the sovereign immunity of government officials acting in their official capacities. *See* Tex. Gov't Code § 311.034. And their citations to *Patel* and *MALC* (at 13) are unhelpful. *Patel* did not consider whether the officials were proper parties under the UDJA. 469 S.W.3d at 77. And the discussion Plaintiffs quote in *MALC* was focused on standing. 647 S.W.3d at 697.

Plaintiffs' claims against the individual defendants are thus doubly barred: They are facially invalid, and the individual defendants are not within the UDJA's waiver of immunity. Because both arguments are jurisdictional, the Court can take them in any order. *Rattray*, 662 S.W.3d at 868-69. Either one should result in rendition of judgment for the individual defendants.

5

## II. Plaintiffs' Substantive Due-Course Claim Is Facially Invalid.

Plaintiffs do not deny that social workers are health care professionals that should be licensed and that those prone to violence should not be licensed. They simply disagree with the State's chosen method of deciding who presents an unacceptable risk of violence—those with criminal convictions for violent felonies. But the due-course clause, Tex. Const. art. I, § 19, does not tie the State's hands to Plaintiffs' preferred method of determining future dangerousness.

Plaintiffs' claims fail from the outset because they have not established a protected liberty interest. *Patel* did not recognize a right to pursue any and all lawful occupations, much less a right to a professional health care license. And Plaintiffs' out-of-context quotations from the late 1800s do not establish that those who adopted the Texas Constitution in 1876 considered the right to work a protected liberty interest. Section 108.052 also survives any applicable constitutional test, as it is (1) rational to protect Texas patients from harm by denying health care licenses to those with a demonstrated history of violence, and (2) not oppressively burdensome to ask individuals to refrain from committing violent felonies. No further trial-court proceedings can fix the flaws in Plaintiffs' legal theory. Their substantive due-course claim is facially invalid and should be dismissed.

### A. Plaintiffs have not established a protected liberty interest in becoming licensed health care workers.

In its opening brief, the State argued (at 15-24) that any liberty interest must be narrowly defined, and that Plaintiffs failed to demonstrate a liberty interest in obtain-

ing a health care license. In response, Plaintiffs continue to assert that there is a general liberty interest in the right to pursue lawful occupations. But *Patel* did not establish that broad constitutional principle, nor is it shown by Plaintiffs' historical analysis. Plaintiffs, therefore, fail at step one of the due-course test.

1.   Plaintiffs first attempt to evade the liberty-interest analysis entirely by asserting that *Patel* recognized a constitutional right to pursue a lawful occupation. Appellees' Br. 18-21. It did not, as the Supreme Court later confirmed. *Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 653 n.16 (Tex. 2022) (noting that the parties in *Patel* "never presented to this Court the issue of whether the eyebrow threaders asserted a protected interest"). Plaintiffs' response does not identify any language in *Patel* holding that eyebrow threaders had a constitutionally protected liberty interest in their work. Instead, Plaintiffs rely (at 18-19) on the length of the *Patel* decision, the number of opinions written, and the number of footnotes in one of the concurrences. Measures of quantity, however, are not a substitute for substance.

And it is a revealing gap in their argument. The Supreme Court was undoubtedly correct in *Crown Distributing* when it noted that *Patel* "did not address the first-step issue"—that is, whether the plaintiffs alleged the deprivation of a right protected by the due-course clause—"because the defendants in that case did not argue that the plaintiffs failed to assert a protected interest." 647 S.W.3d at 653 n.16. Plaintiffs attempt to downplay this observation of fact by calling it "dicta." It is not. The *Crown Distributing* plaintiffs argued that *Patel* protected their right to manufacture smokable hemp products. *Id.* at 653. The Court explained why it did not—namely, because

*Patel* never considered the liberty-interest question. *Id.* at 653 n.16.[1] The Court went on to state that it need not "decide how or whether Texas's due-course clause protects all such occupations or callings," implying that it had never decided "whether" Texas's due-course clause protects all occupations or callings. *Id.* at 655. The due-course clause's protection of the right to pursue any lawful occupation remains an open question.

**2.** With *Patel* off the table, Plaintiffs' support for a liberty interest is thin. Plaintiffs make no response to the State's argument (at 15-16) and the Supreme Court's command that the asserted liberty interest must be "carefully define[d]." *State v. Loe*, 692 S.W.3d 215, 235 (Tex. 2024). As the State's opening brief explained (at 16-18), that carefully defined liberty interest here is the right to become a licensed health care professional. That right is not a protected liberty interest.

Plaintiffs, however, continue to focus on a broad right to pursue a lawful calling without unreasonable governmental interference. But they cite no constitutional provisions (other than the due-course clause) or statutes. And the only Texas Supreme Court case they cite (other than *Patel*) referred to the right to earn a living as a "property" right. *Smith v. Decker*, 312 S.W.2d 632, 633 (Tex. 1958). Beyond that, most of their support relies on context-free quotes from the late 1800s. But, consid-

---

[1] As Plaintiffs argue (at 19), the Court *should* have considered the question. But it did not. Plaintiffs have pointed to no such analysis, and constitutional precedent is not created via silence. *See Cooper Indus. v. Aviall Servs.*, 543 U.S. 157, 170 (2004).

ered in context, those references do not establish that the framers of the Texas Constitution considered the due-course clause's protection of "liberty" to include the right to work, much less the right to obtain a health care license.

Several of Plaintiffs' references explicitly recognize that liberty interests are permissibly limited by the laws of the State. *See e.g.*, *Civil Liberty*, 1 Alexander M. Burrill, *A Law Dictionary and Glossary* (2d ed. 1871) ("so far restrained by human laws"); *see also Dent v. State of W.Va.*, 129 U.S. 114, 121 (1889) (recognizing a right to follow a lawful calling "subject only to such restrictions as are imposed upon all persons of like age, sex, and condition"). And one article called on legislators to require all fermented liquors to be sold under a license—explicitly asking for the occupation to be governed by the State. *A New Political Platform*, Galveston Daily News, June 11, 1874, at 2.[2]

Many of the articles cited are arguments opposing occupation taxes. *E.g.*, *Injustice of the Occupation Tax*, Denison Daily News, May 19, 1876, at 2; Fort Worth Standard, July 8, 1875, at 1; *The Occupation Tax*, Galveston Daily News, May 18, 1876, at 4. Yet the people adopted a Constitution that explicitly permitted occupation taxes, Tex. Const. art. VIII, § 2, and the Legislature imposed such taxes, *e.g.*, Act approved Apr. 3, 1879, 16th Leg., R.S., ch. 66, 1879 Tex. Gen. Laws 71 (adopting occupation tax on the sale of liquors). The Framers and Legislature, accordingly, did not see the right to work as a barrier to taxation on that work.

---

[2] The newspaper articles cited by Plaintiffs can be found at the Portal to Texas History, https://texashistory.unt.edu/.

Some quotations have no context at all but appear in between advertisements for tailors and windows or following comments on the President's wedding. Denison Daily Herald, Dec. 22, 1878, at 5; *Current Comment*, Evening Tribune (Galveston), Apr. 29, 1886, at 1. And Provisional Governor Hamilton's address to Texas freedmen, explaining that they now have the right to work for their own living, carries a different meaning to an audience of former slaves, who were previously forced to work for someone else's living. *Address to the Freedmen of Texas*, Semi-Weekly State Gazette (Austin), Nov. 21, 1865, at 1.

Other statements of government officials cited by Plaintiffs do not establish that "liberty" in the Texas Constitution included the right to work. The lone case cited by Plaintiffs did not reference any constitutional provision at all. *Lumber Inspection*, Galveston Daily News, Apr. 9, 1875, at 4 (discussing *City of Galveston v. Gonzales*). Likewise, the Attorney General did not cite a constitutional provision when concluding that "brandy peaches" are not subject to the occupation tax that applied to intoxicating liquors. Tex. Att'y Gen. Op. No. 3438 (To Seller of Brandy Fruits, Aug. 24, 1875), Tex. State Libr. & Archives Comm'n, Box 2006/216-1 (https://perma.cc/KZ2L-C8Z3). And Governor Ross was arguing about rates charged by railways. *Railways*, Jacksboro Gazette, Jan. 17, 1889, at 2.

As Justice Young has explained, determining what the due-course clause means requires significant research—text, history, cases, treatises, records of the convention, other States' constitutions, practices, and prior scholarship. *Crown Distrib.*, 647 S.W.3d at 678-80 (Young, J., concurring). Plaintiffs' handful of newspaper articles does not accomplish that task.

**3.** Plaintiffs' other counterarguments are unavailing.

*First*, Plaintiffs assert (at 28) that no one can be prohibited from practicing social work because the Legislature did not regulate social workers until 1981. Act of June 1, 1981, 67th Leg., R.S., ch. 776, 1981 Tex. Gen. Laws 2923. But the choice of previous Legislatures not to regulate social work does not mean it is now constitutionally prohibited from doing so. *See United States v. Rahimi*, 602 U.S. 680, 739-40 (2024) (Barrett, J., concurring) (finding it problematic to "assume[] that founding-era legislatures maximally exercised their power to regulate, thereby adopting a 'use it or lose it' view of legislative authority"). Holding otherwise would constitutionalize all professions that were not regulated in the late 1800s. And in any event, as the State has shown (at 19-20), the Legislature has long been invested in the regulation of health care professions.

*Second*, Plaintiffs argue (at 28) that the regulation of doctors in the 1800s does not mean that health care professions are unprotected. The State has never argued that the early regulation of doctors is dispositive. Rather, it is one of many points of evidence (constitutional text, statutory history, and precedent) that inform whether there is a protected liberty interest in becoming a licensed health care worker.

\* \* \*

Plaintiffs ultimately fail to grapple with the magnitude of what they are asking the Court to recognize. If there is a generalized right to pursue any lawful occupation, the entire Occupations Code is now subject to *Patel*'s benefit-versus-burden analysis. Hiring and firing decisions by a governmental entity that impact a person's right to practice their profession would also be subject to constitutional scrutiny under

11

*Patel*. In the nearly 150 years since the due-course clause was adopted, no court has given it that wide-ranging effect. Plaintiffs' claim will fail as a matter of law for lack of a protected right and is accordingly facially invalid.

## B. Section 108.052 satisfies all relevant constitutional tests.

Should the Court determine that Plaintiffs have alleged the deprivation of a protected liberty interest, Plaintiffs' claims are still invalid under any applicable constitutional test. Section 108.052 is a rational way to protect Texas patients, and refraining from committing violent felonies is not an unconstitutional burden.

1. Plaintiffs do not appear to argue that section 108.052 fails the rational-basis test, resting their argument entirely on *Patel*'s unique analysis. But as the State explained (at 25-26), *Patel* is inapplicable because (1) social work is not a "common occupation" but one that requires significant training and expertise, and (2) section 108.052 is not "economic legislation" or the "governmental regulation of economic interests," 469 S.W.3d at 86-87, but the regulation of health care, an area that has been traditionally regulated by the Legislature.

Subject only to rational basis, the Legislature's decision must be upheld because section 108.052 is rationally related to a legitimate state interest. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 301 (2022). Plaintiffs do not dispute that individuals who are prone to violence should not be licensed as health care workers. The only question is how to make that determination. The Legislature chose to draw a hard line—eliminating from consideration those individuals whose convictions for violent felonies demonstrate a potential for violence. Tex. Occ. Code § 108.052. Although Plaintiffs believe section 108.052 excludes too many, the Legislature's choice

need not be perfect—only rational. For the reasons Texas has already explained, section 108.052 meets that requirement. Appellants' Br. 26-30.

**2.** Assuming *Patel* applies, Plaintiffs first assert that section 108.052's "purpose" is not "arguably [] rationally related to a legitimate governmental interest." 469 S.W.3d at 87. Courts have recognized naked economic protectionism as one such improper purpose. *See, e.g.*, *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222-23 (5th Cir. 2013); *TABC v. Live Oak Brewing Co.*, 537 S.W.3d 647, 657 (Tex. App.—Austin 2017, pet. denied). But Plaintiffs do not suggest that is what motivated the law here. Instead, they redefine the purpose of the section 108.052—safety of patients—and instead claim it was enacted to "bar[] people who would otherwise pass discretionary review" from becoming social workers. Appellees' Br. 30.

For Plaintiffs' improper-purpose theory to work, the Court would have to assume that the individualized-determination process flawlessly weeded out all potentially violent health care workers and then reason that the only possible purpose for section 108.052 was to prevent qualified individuals from becoming licensed health care workers. But the only evidence in the legislative record demonstrates otherwise: One of the bill analyses of H.B. 1899 (which contained section 108.052) explained that "[c]oncerns have been raised regarding the prevalence of licensed health care professionals using their privilege and position of authority to commit crimes against vulnerable patients." House Comm. on Pub. Health, Bill Analysis, Tex. H.B. 1899, 86th Leg., R.S. (2019). That same analysis noted that "[i]t has been suggested that one way to prevent these horrific crimes is to make individuals who have committed

certain crimes . . . ineligible for health care professional licenses." *Id.* Considered as a whole, H.B. 1899 was aimed at the safety of patients. *See* Appellants' Br. 30.

The Legislature believed the individualized-determination process was imperfect, resulting in harm to patients from individuals who should never have been licensed. So the Legislature drew a harder line. Plaintiffs may find the Legislature's choice overbroad or unwise, but the wisdom of a law is not the province of the courts. *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 520 (Tex. 1995). Plaintiffs cannot show that section 108.052 was motivated by an improper purpose.

**3.** The second *Patel* test requires Plaintiffs to show that "when considered as a whole, [section 108.052]'s actual, real-world effect as applied to [licensed master social workers] could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest." 469 S.W.3d at 87. In short, *Patel* asks courts to decide whether the regulation is worth it. *See* Appellees' Br. 37 (asking the Court to "look at the evidence and determine whether the governmental interest behind a law justifies the burden that law places on citizens"). But a benefit-versus-burden balancing test creates significant concerns, as courts are asked to essentially reweigh the policy arguments already considered by the Legislature. *E.g.*, *Dobbs*, 597 U.S. at 281 (holding that the "undue burden" test is "inherently standardless"). The Court should be extraordinarily cautious when applying it.

*Patel* found a burdensome real-world effect because having to complete 750 (largely unnecessary) hours of training merely to thread eyebrows was a burden on anyone who wanted to thread eyebrows. 469 S.W.3d at 88-90. The alleged burden

14

here—not committing violent felonies—is not the same. Most people do not commit, or have not committed, violent felonies, so for a majority of the population, section 108.052 imposes no burden at all.

Plaintiffs' real-world effects argument (at 32-33), therefore, focuses almost exclusively on Plaintiffs themselves and whether this requirement burdens them. But Plaintiffs have brought a facial challenge. CR.216. Accordingly, they must demonstrate that "the statute *always* operates unconstitutionally." *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex. 1999) (emphasis added). Even at the pleading stage, it is obvious that (1) section 108.052 will screen out unquestionably violent individuals, and (2) it is not burdensome to refrain from committing violent felonies. Thus, Plaintiffs will never be able to show that section 108.052 is facially unconstitutional.

As for Plaintiffs' as-applied challenge, for the reasons explained in the State's opening brief (at 34-36), individual as-applied challenges make little sense in this context. Any line drawn by the State in any of its occupational-licensing schemes—no matter how rational—could still burden individuals who cannot meet that standard and result in demands, like here, to except them from the rules that apply to all others. If an occupational-licensing requirement is not unconstitutionally burdensome generally, the Court should not create individual exceptions. Doing so would defeat the point of setting generally applicable standards by statute. Indeed, even in *Patel*, the Court considered the burden on eyebrow threaders as a whole, not just the burden on the individual plaintiffs. 469 S.W.3d at 88-90.

**4.** Plaintiffs finish their substantive due-course analysis with a bullet-point list of twenty-four out-of-state cases that arguably support their position. Appellees' Br.

15

38-40. But the majority of those cases do not discuss substantive due-course or substantive due-process at all. *E.g.*, *Miller v. Carter,* 547 F.2d 1314 (7th Cir. 1977) (per curiam), *aff'd*, 434 U.S. 356 (1978) (not reaching substantive due-process question); *Furst v. NYC Transit Auth.*, 631 F. Supp. 1331 (E.D.N.Y. 1986) (not reaching due-process question); *Perrine v. Mun. Ct.*, 488 P.2d 648 (Cal. 1971) (considering only a First Amendment challenge). Of the few that do reach the question, most come from Pennsylvania, which has a constitutional provision that protects the right of men to "pursu[e] their own happiness," Penn. Const. art. I, § 1, and whose laws "must not be unreasonable, unduly oppressive or patently beyond the necessities of the case," *Nixon v. Pennsylvania*, 839 A.2d 277, 287 (Penn. 2003). Texas has no such constitutional provision or precedent.

The two cases highlighted by Plaintiffs do not support them, either. *Chunn v. State, ex rel. Mississippi Department of Insurance*, concerned only an equal-protection claim. 156 So. 3d 884, 885 (Miss. 2015). And in *Barletta v. Rilling*, the court *rejected* the due-process claim because of a lack of a protected interest. 973 F. Supp. 2d 132, 140 (D. Conn. 2013). Other cases cited by Plaintiffs also found that the due-process claims failed. *Haveman v. Bureau of Pro. & Occupational Affs.*, 238 A.3d 567, 577 (Pa. Commw. Ct. 2020) (en banc); *Shimose v. Haw. Health Sys. Corp.*, 345 P.3d 145, 154 n.17 (Haw. 2015). Plaintiffs' attempt to paint a picture of nationwide support for their substantive due-course claim does not withstand scrutiny.

At the end of the day, even if Plaintiffs have a protected interest in becoming licensed social workers, section 108.052 is not unconstitutional. It represents a rational solution to the problem of potentially violent individuals obtaining health care

licenses, and it imposes no burden beyond what the law already requires—avoiding the commission of violent felonies. Plaintiffs' substantive due-course claim will inevitably fail and should be dismissed.

## III. The Enactment of Section 108.052 Did Not Deprive Plaintiffs of Procedural Due Course.

Plaintiffs' procedural due-course claim fails for one simple reason: The alleged deprivation of Plaintiffs' liberty interest was caused by the enactment of H.B. 1899, not the individual actions of the Council and Board. And as the Texas Supreme Court has stated, citing the United States Supreme Court, "[w]hen the legislature enacts a law . . . that affects a general class of persons, all of those persons have received procedural due process by the legislative process itself and they have no right to individual attention." *Matzen v. McLane*, 659 S.W.3d 381, 392 (Tex. 2021) (quoting *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986), and citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915)). Because H.B. 1899, and section 108.052 specifically, are generally applicable laws, Plaintiffs are not entitled to an individualized hearing before that law is applied to them.

**A.** Contrary to Plaintiffs' claim, this case is squarely governed by *Matzen*. There, the Legislature amended the laws concerning sexually violent predators (SVPs) to create a tiered system. *Id.* at 385-86. Matzen received an individualized hearing to determine where he fell within that new system—that is, to determine how he matched up to the State's criteria. *Id.* at 386. But when the Texas Civil Commitment Office (TCCO) adopted a generally applicable rule regarding the costs owed by SVPs like Matzen, the Supreme Court held that he was not entitled to an

17

individualized hearing before that rule would be applied to him. *Id.* at 391-92. Specifically, the TCCO did not need to "provide every SVP with individualized process every time it alter[ed] generally applicable rules or policies governing committed SVPs." *Id.* at 392. The legislative process itself sufficed.

Plaintiffs point (at 44-45) to Matzen's initial hearing that determined that he would be subject to the cost-recovery rules as proof that an individualized hearing is required in their case. But Matzen's hearing was for the purpose of determining whether he was the kind of SVP that would, among other things, owe costs. *Matzen*, 659 S.W.3d at 386. Thus, when the cost rule was changed, it unquestionably applied to him. But there is no dispute here that Plaintiffs are the kind of individuals to whom section 108.052 applies—applicants to become licensed master social workers. No hearing is required to establish Plaintiffs' status under the law because there is no risk of getting it wrong. Thus, when the social-worker requirements changed, those changes applied to Plaintiffs without the need for a further hearing.

Regardless, Plaintiffs received due course regarding whether they met the requirements to become a licensed master social worker. Each submitted their applications to the Council, and when the Council denied them, they appealed to the Board. CR.197-98, 203-04; 22 Tex. Admin. Code § 882.3. After the Board's ruling, each had the opportunity to appeal to SOAH: Youniacutt dismissed her appeal to SOAH, CR.199, and Thompson never filed one, CR.205. Plaintiffs received an individualized determination regarding whether they met the law's standards—they were not entitled to another determination regarding whether they met a different standard of their own choosing.

18

**B.** *Matzen* falls within the adjudicative/legislative framework laid out in the State's opening brief. Appellants' Br. 35. Deciding whether Plaintiffs met the State's qualifications for becoming licensed master social workers or whether Matzen met various SVP criteria is an adjudicative process, and each received individualized consideration. *See Tarrant County v. Ashmore*, 635 S.W.2d 417, 423 (Tex. 1982) (describing adjudicative process). Deciding whether the State should prevent those with convictions for violent felonies from becoming licensed health care workers or whether SVPs should pay certain costs is a legislative process, which does not require individualized hearings. *See id.* (describing legislative fact-finding as "deal[ing] with matters of policy and administrative discretion, and affect individual parties to a dispute only to the extent that those parties are involved in the overall legislative scheme").

To avoid this outcome, Plaintiffs attempt to claim (at 45) that they were individually denied licenses by the Council and Board. But Plaintiffs' failure to become licensed master social workers was not the result of an individualized determination by the Council or Board. Rather, it was the result of a legislative judgment by the Texas Legislature as expressed in section 108.052.

As the Fifth Circuit has held, "[w]hen a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due." *Edionwe v. Bailey*, 860 F.3d 287, 293 (5th Cir. 2017) (quoting *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993)). Thus, even if section 108.052 impacted a liberty interest, it affects a general class of people (licensed health care workers and applicants). Therefore, Plaintiffs (and any other health care

19

professional with a qualifying felony) have received due course from the legislative process itself.

**C.** Plaintiffs rely (at 46) on cases in other jurisdictions to "show[] how laws like [section 108.052] violate the procedural rights of people like Plaintiffs." But the State already explained why each of those out-of-state cases is distinguishable. *See* Appellants' Br. 40-42. The court in *Fields v. Department of Early Learning* did not consider whether the rule-making process provided the constitutionally required process, and the rule at issue appeared to exceed the bounds of the state agency's authority. 434 P.3d 999, 1006 (Wash. 2019). In *Gregg v. Lawson*, the plaintiff had a protected property interest, something Plaintiffs have not claimed here. 732 F. Supp. 849, 853-54 (E.D. Tenn. 1989). And the Massachusetts trial court in *Cronin v. O'Leary*, reached its conclusion based on the *Massachusetts* Declaration of Rights and *Massachusetts* caselaw regarding the procedural rights of those convicted of sex offenses. No. 00-1713-F, 2001 WL 919969, at *5-6 (Mass. Super. Ct. Aug. 9, 2001). Plaintiffs do not address these distinctions.

Even if Plaintiffs' out-of-state cases would result in a different conclusion here, this case is controlled by *Matzen*, which interprets the Texas Constitution's due-course clause. And interpretations of that clause "lie in the text of the Texas Constitution, not in the traditions, experiences, or choices of other states." *Tex. DFPS v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 886 (Tex. 2025).

\* \* \*

Contrary to Plaintiffs' hyperbolic claim, the State is not asserting that laws are constitutional "merely because they are laws." Appellees' Br. 44 (citing *McFadden*

20

*v. Longham*, 58 Tex. 579, 585 (1883)). But if the Legislature validly enacts a generally applicable law, the procedural due-course clause is satisfied, regardless of whether any other constitutional provision is violated. It is, instead, Plaintiffs' theory that does damage to the law. Under Plaintiffs' broad conception of the right to work, every time an individual cannot meet an occupational-licensing requirement, he has a constitutional right to a hearing to ask the agency to license him anyway—regardless of what the Legislature has decreed. That has never been the law, nor do Plaintiffs point to any Texas case making such a broad pronouncement. Their procedural due-course claim is facially invalid and should be dismissed.

## IV. Section 108.052 Does Not Violate the Texas Constitution's Guarantee of Equal Rights.

Plaintiffs' equal-rights claim is also facially invalid because the Legislature rationally created different professional licenses with different requirements. Plaintiffs' belief that social workers are similar enough to other professions that are not subject to section 108.052 raises an issue for the Legislature, not the courts.

**A.** To state a viable equal-rights claim, Plaintiffs must meet the heavy burden of demonstrating that the challenged law is not rationally related to a legitimate government interest. *Klumb*, 458 S.W.3d at 13; *see also* Tex. Const. art. I, § 3. Under this standard, a court "must uphold the law if [it] can conceive of any rational basis for the Legislature's action." *Owens Corning v. Carter*, 997 S.W.2d 560, 581 (Tex. 1999). And, indeed, Plaintiffs concede (at 49) that this constitutional test is not "subject to courtroom factfinding." *Klumb*, 458 S.W.3d at 13.

Plaintiffs compare licensed master social workers to licensed professional counselors and licensed marriage and family therapists.[3] As the State pointed out (at 45-47), these professions all require different education and training. Tex. Occ. Code §§ 502.252, 503.302, 505.353. And the required education for social workers is more strict: Social workers must have a degree in "social work," *id.* § 505.353(b), while professional counselors and marriage and family therapists need a degree only in a "related" field, *id.* §§ 502.252(4), 503.302(2). Each license also permits different types of practice. *Id.* §§ 502.002(6), 503.003, 505.0025. Plaintiffs do not claim that any of these distinctions are irrational—only the treatment of violent felonies in the criminal-history consideration. As Plaintiffs argue (at 49-50), because all of these professions may involve one-on-one sessions, it is irrational to require only social workers to remain free from violent felonies.

But, of course, social workers do not engage *only* in one-on-one sessions, and the Legislature has enacted multiple statutes that apply to social workers, but not professional counselors or marriage and family therapists. For example, licensed clinical and master social workers may be involved in performing a threat assessment for students in special-education programs. Tex. Educ. Code § 37.115(d-1). Licensed social workers may attempt to achieve nonjudicial enforcement of child-support obligations and access to a child. Tex. Fam. Code § 202.002(a). They may also represent

---

[3] Plaintiffs did not brief the assertion in their live petition that it is irrational to treat individuals with convictions for violent felonies different from those without such convictions. CR.219 (¶¶ 240, 244). Presumably, they are no longer making that argument.

individuals in penal institutions who have been subjected to sexual assault. Tex. Code Crim. Proc. art. 56A.352(b-1). The National Association of Social Workers, which Plaintiffs rely on in their brief (at 3), also explains the wide variety of situations in which social workers are found—far beyond one-on-one counseling. *See* Nat'l Ass'n of Soc. Workers, *Types of Social Work* (noting that "[s]ocial workers are found in every facet of community life, including schools, hospitals, mental health clinics, senior centers, elected office, private practices, prisons, military, corporations, and in numerous public and private agencies").[4]

Perhaps professional counselors and marriage and family therapists should also have been covered by section 108.052. But section 108.052 is not unconstitutionally irrational "simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." *Klumb*, 458 S.W.3d at 14 (quoting *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 808 (1969)). Instead, a "legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind[.]'" *Id.* (quoting *McDonald*, 394 U.S. at 809).

**B.** As with their other claims, Plaintiffs rely heavily on out-of-state cases to argue what the Texas Constitution requires. But their cases are distinguishable. In *Haveman*, an intermediate Pennsylvania appellate court found that barbers and cosmetologists would complete similar, if not the same, services on salon patrons. 238 A.3d at 579. But social workers, professional counselors, and marriage and family

---

[4] Available at https://www.socialworkers.org/News/Facts/Types-of-Social-Work.

therapists perform different, if overlapping, tasks. As Plaintiffs assert in their live petition, social workers (not counselors or therapists) are often the first points of contact for vulnerable people looking for mental health help. *See* CR.206 (quoting Stephen Simpson, *A Look at the Texas Mental Health Workforce Shortage*, Tex. Trib. (July 17, 2024)). In *Barletta*, the law applied to *all* felons, not just a subset of individuals with relevant felony convictions. 973 F. Supp. 2d at 137. Section 108.052, however, does not prohibit all felons from obtaining health care licenses, but only those with convictions for violent felonies—convictions Plaintiffs agree are, at a minimum, relevant to licensure. The rule in *Gregg* also covered all felony convictions, 732 F. Supp. at 851, and the court did not find an equal-protection violation—it merely allowed the claim to proceed, *id.* at 856. These cases do not establish that Plaintiffs have brought a facially valid claim; they establish only that Plaintiffs have no Texas precedent on which to rely.

The Legislature may ultimately decide to return to individualized determinations, and, indeed, one such bill was filed in the last legislative session, although it saw little movement. Tex. H.B. 4974, 89th Leg., R.S. (2025). But what professions require enhanced safety is a quintessentially legislative choice. The Court should not short circuit the Legislature's process by constitutionalizing occupational-licensing schemes.

## Prayer

The Court should reverse the reverse the judgment of the trial court and render judgment dismissing the case for lack of subject-matter jurisdiction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

/s/ Beth Klusmann
BETH KLUSMANN
Assistant Solicitor General
State Bar No. 24036918
Beth.Klusmann@oag.texas.gov

Counsel for Appellants

## Certificate of Compliance

Microsoft Word reports that this brief contains 6,555 words, excluding exempted text.

/s/ Beth Klusmann
BETH KLUSMANN

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Maria Mendoza-Williamson on behalf of Beth Klusmann
Bar No. 24036918
maria.williamson@oag.texas.gov
Envelope ID: 105730660
Filing Code Description: Other Brief
Filing Description: 20250917_ Youniacutt_ Reply Brief for Appellants
Status as of 9/17/2025 4:43 PM CST

Associated Case Party: Katherin Youniacutt and Tammy Thompson

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Arif Panju | 24070380 | apanju@ij.org | 9/17/2025 4:19:13 PM | SENT |
| James T. Knight II | | jknight@ij.org | 9/17/2025 4:19:13 PM | SENT |

Associated Case Party: Texas State Board of Social Workers Examiners, et al.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Ramsey | 24051227 | John.Ramsey@oag.texas.gov | 9/17/2025 4:19:13 PM | SENT |
| Beth Klusmann | | beth.klusmann@oag.texas.gov | 9/17/2025 4:19:13 PM | SENT |
| Ali Thorburn | 24125064 | ali.thorburn@oag.texas.gov | 9/17/2025 4:19:13 PM | SENT |
| Eric Abels | | Eric.Abels@oag.texas.gov | 9/17/2025 4:19:13 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 9/17/2025 4:19:13 PM | SENT |
| Andrew Ward | | andrew.ward@ij.org | 9/17/2025 4:19:13 PM | SENT |
| Ashlynn Acosta | | aacosta@ij.org | 9/17/2025 4:19:13 PM | SENT |
| Claire Purple | | cpurple@ij.org | 9/17/2025 4:19:13 PM | SENT |
| Victor Hernandez | | victor.hernandez@oag.texas.gov | 9/17/2025 4:19:13 PM | SENT |